**MORRISTOWN DAILY RECORD, INC., Appellant,**

v.

**GRAPHIC COMMUNICATIONS UNION, LOCAL 8N, Appellee.**

No. 87–5321.

United States Court of Appeals, Third Circuit.

Argued Aug. 18, 1987.

Decided Oct. 29, 1987.

Kathleen M. McKenna (argued), Jedd Mendelson, Seyfarth, Shaw, Fairweather & Geraldson, New York City, for appellant, Morristown Daily Record, Inc.

Paul A. Montalbano (argued), Schneider, Cohen, Solomon, Leder and Montalbano, Jersey City, N.J., for appellee, Graphic Communications Union, Local 8N.

Before GIBBONS, Chief Judge, and WEIS and SLOVITER, Circuit Judges.

**OPINION OF THE COURT**

WEIS, Circuit Judge.

Although it acknowledged its obligation to decide whether a collective bargaining agreement required that a particular grievance be arbitrated, the district court nevertheless referred the issue of arbitrability to an arbitrator. The court believed that this question was inseparable from the merits of the underlying dispute. After a careful reading of the labor contract, we find the issues of arbitrability and the merits to be discrete and independent. Therefore, we conclude that the district court can resolve the threshold question of arbitrability with-

out encroaching on the substance of the grievance. Accordingly, we will remand for further proceedings.

■ The company brought this action against the union for a declaratory judgment that a particular grievance was excluded from arbitration by the terms of the collective bargaining agreement. The district court denied the company's request and granted the union an injunction compelling arbitration.[1]

Plaintiff company and defendant union were parties to a collective bargaining agreement in effect at the time of this controversy. The company publishes and distributes a newspaper in Morristown, New Jersey. In December 1985, when an opening occurred in its pressroom, the company advised the union of the vacancy as required by section 21 of the collective bargaining agreement. Responding to this notification, the union referred Robert Forbes, one of its members, for the position. He worked pressroom night shifts of December 7 and December 8. Forbes contends that when he reported for work on December 9, he was told that the company's production manager had ordered his dismissal.

The union filed a grievance on Forbes' behalf, asserting that he was wrongfully discharged. When informal procedures failed to resolve this grievance, the union sought arbitration as provided by section 5 of the collective bargaining agreement. The company, however, refused the union's demand, maintaining that Forbes was not hired as a regular journeyman within the coverage of section 5.

The company asserts that it employs two categories of pressroom workers: regular journeymen who make up the daily work force, and substitute journeymen who are hired for only a single shift to meet the fluctuating needs of the newspaper. Because this latter category of employees is hired only for one shift, the company argues that a refusal to retain a substitute journeyman is a non-arbitrable hiring decision rather than an arbitrable discharge. The company contends that Forbes was an "applicant" for hire whom it could reject for employment under section 21 without triggering the arbitration clause.

Distinguishing the present case from *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the district court directed the parties to arbitrate. Unlike the parties in *AT & T Technologies*, the company and union here did not dispute the content of the arbitration exemption clause. Instead, the district court viewed the underlying dispute as whether the company's decision to "turn down Mr. Forbes for more work was properly made in accordance with the limitations of the contract."

The district court judge continued: "a determination by the court regarding plaintiff's actions denying further work to Mr. Forbes would resolve the 'relative merits of the parties' substantive interpretations of the agreement,' and would thus resolve the step in the parties' dispute which was saved for the arbitrator in *AT & T*. In short, *AT & T* does not forbid arbitration here, it calls for arbitration." Without any further elaboration, the court directed the parties to arbitrate the Forbes dispute.

On appeal, the company alleges that the district court erred in failing to give effect to section 21 of the collective bargaining agreement which expressly excluded from arbitration the company's rejection of union-referred applicants. The union contends that, under section 5 of the agreement, the arbitrator is to resolve disputes as to the meaning of the terms in the contract and, therefore, the district judge's order referring the grievance to the arbitrator was correct.

---

1. The district court also denied a request for Fed.R.Civ.P. 11 sanctions by the company, which had asserted that the union's defense was frivolous. Because the issues in this case are close, we consider the company's invocation of Rule 11 to border on the abusive. We caution litigants that Rule 11 is not to be used routinely when the parties disagree about the correct resolution of a matter in litigation. Rule 11 is instead reserved for only exceptional circumstances.

■ Our review begins with the principles summarized in *AT & T Technologies.* Arbitration in collective bargaining agreements is a matter of contract; the arbitrators derive their authority from the parties' voluntary agreement. "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies,* 475 U.S. at 648, 106 S.Ct. at 1418; *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

Whether a dispute is arbitrable is a question for the court to resolve. Absent the parties' clear expression to the contrary, *see Johnson v. United Food & Commercial Workers Int'l, Local No. 23,* 828 F.2d 961, 963–66 (3d Cir.1987), that threshold question is to be decided by the court, not the arbitrator. *AT & T Technologies,* 475 U.S. at 649, 106 S.Ct. at 1418; *Warrior & Gulf,* 363 U.S. at 582, 583 n. 7, 80 S.Ct. at 1352, 1353 n. 7. In determining whether the parties have agreed to submit to arbitration, the court must avoid ruling on the merits of the underlying claims. *AT & T Technologies,* 475 U.S. 649, 106 S.Ct. at 1419; *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

Application of these principles may be complicated by contractual provisions excluding certain matters from the scope of an otherwise broad arbitration clause. The Supreme Court confronted this problem in *AT & T Technologies.* There, an expansive arbitration clause applied only to disputes "not excluded from arbitration by other provisions of this contract." A management rights clause conceding the company's limited authority to hire, place, and terminate employees was excluded expressly from the arbitration provision.

The matter at issue in *AT & T Technologies* was whether the employer had violated the collective bargaining agreement by laying off workers in one location and bringing in others from different assignments as replacements. The union contended that the dispute was controlled by a separate clause in the contract, which set out the procedures for laying off employees when "lack of work" required it. This clause was not excluded expressly from the arbitration provision. Conversely, the employer argued that the dispute came within the management rights proviso which, by its terms, made such disputes nonarbitrable.

The court of appeals concluded that the dispute should be referred to the arbitrator because choosing between the two substantive sections of the collective bargaining agreement would enmesh the district court in the merits. The Supreme Court disagreed, explaining that it was the court's duty in the first instance to determine whether the parties intended to arbitrate grievances over layoffs predicated on the employer's assertions of lack of work. Only if the district court found that the parties so intended could the arbitrator decide which party's substantive interpretation was correct.

In his concurrence, Justice Brennan explained that the district court had mistakenly read the exclusion provision in the management rights clause in a manner that made arbitrability depend on the merits of the parties' underlying dispute. The proper inquiry, wrote Justice Brennan, was actually much simpler—had the parties agreed to arbitrate disputes over the meaning of the exclusion clause. The district court need not, and should not, have decided which party's interpretation of the clause was correct. *AT & T Technologies,* 475 U.S. at 653–56, 106 S.Ct. at 1421–22 (Brennan, J., concurring).

The Supreme Court remanded the case for a determination of whether an "express exclusion or other forceful evidence" indicated the parties' intention not to submit the layoff clause controversy to arbitration. *Id.* 475 U.S. 652, 106 S.Ct. at 1420.

Careful review of *AT & T Technologies* illustrates that the Supreme Court has not weakened its enthusiastic endorsement of arbitration in labor disputes. However, the message is clear that courts must carefully analyze the contractual language to determine whether a particular dispute is arbi-

trable. Although answering that question may entail some probing of preliminary substantive issues, that requirement will not relieve courts of the duty to decide arbitrability.

The line drawing the Court prescribes, however, is sometimes easier to state than apply. In *Oil, Chemical & Atomic Workers' Int'l Union, Local 4–447 v. Chevron Chemical Co.*, 815 F.2d 338, 343–44 (5th Cir.1987), a case decided after *AT & T Technologies*, a grievance raised the issue whether a temporary employee's assignment was within certain job classifications listed in the collective bargaining agreement. If the answer was affirmative, the dispute was arbitrable. However, if the answer was negative, the dispute was not arbitrable.

The collective bargaining agreement provided that the parties arbitrate all grievances involving "the application or interpretation" of the contract. The court of appeals concluded that the question whether the complaining employee fell within the pertinent job classifications called for "the application or interpretation" of the collective bargaining agreement. Therefore, the court ruled that the threshold issue of the employee's status was arbitrable. As a consequence, the arbitrator was asked to decide if the relevant contractual classifications covered that employee even though disposition of that issue would ultimately resolve the question of arbitrability.

This court decided *E.M. Diagnostic Systems, Inc. v. Local 169, Int'l Bhd. of Teamsters*, 812 F.2d 91 (3d Cir.1987), in light of *AT & T Technologies*. We noted there that if the collective bargaining agreement contains an arbitration clause, a presumption of arbitrability arises. However, we rejected the proposition that the phrasing of a grievance provides the basis for deciding arbitrability. In this respect the analysis differs from the narrow approach used to determine a court's jurisdiction by examining the allegations in a complaint. *E.M. Diagnostic Systems* held instead that the test for arbitrability properly focuses on the substance of the grievance. As we said in *Radio Corporation of Amer-*

*ica v. Association of Scientists & Professional Engineering Personnel*, 414 F.2d 893, 895 (3d Cir.1969), "we must first isolate the nature of the dispute."

The parties' disagreement here centers on Forbes' status. Asserting that he reported to the pressroom as an "applicant" on December 9, 1985, the company posits that it merely denied him further employment on that date. In contrast, the union insists that Forbes was an "employee" who had been hired and then discharged. Ascertaining which section of the collective bargaining agreement applies to Forbes turns on a determination of the nature of his relationship with the company.

Section 5 provides, in pertinent part, that "[i]n the event any dispute during the term of this Agreement arises in regard to the meaning of the terms of this Agreement or as to a violation of any of the terms of this Agreement or in the event of a discharge of an employee within said bargaining unit, a grievance must be submitted." If informal procedures fail, section 5 authorizes formal arbitration of the grievance.

Section 21 reads in part: "When openings occur within the pressroom, the Publisher shall notify the Union of said opening. The Union shall have 48 hours to provide applicants. The Publisher has the right to reject said applicants. Said rejection may be grieved, but shall not be a subject for arbitration."

Accordingly, if Forbes was an "applicant" whom the company simply refused to hire, section 21 is effective and the dispute is not arbitrable. If Forbes was an "employee" whom the company discharged, section 5 applies and the grievance is arbitrable. The complication here arises from the failure of the collective bargaining agreement to define the term "applicant" or to specify the procedure for determining whether to classify an individual as an "applicant" or as an "employee."

*AT & T Technologies* holds that in such circumstances the courts shall determine whether the parties agreed to submit a disputed issue to arbitration. 475 U.S. at

648–50, 106 S.Ct. at 1418–19. But in the absence of an "express exclusion or other forceful evidence," the presumption of arbitrability dictates that the arbitration clause be given a liberal construction. *E.M. Diagnostic Systems, Inc.,* 812 F.2d at 95. *See also Westinghouse Broadcasting Co. v. Local 804, Int'l Alliance of Theatrical Stage Employees,* 616 F.2d 97, 100–01 (3d Cir.1980).

The evidence produced by the company here tends only to establish its substantive assertions on Forbes' designation. It is relevant only if the parties agreed to exclude disagreements over employee classifications from the general arbitration clause. That evidence does not assist us in deciding who—the court or the arbitrator—should determine whether Forbes was an applicant or a permanent employee; rather, it goes to the merits of that threshold question. The union's presentation in the district court was even less helpful.

Neither the district court nor the parties adequately isolated the distinct issues requiring decision. The court's order directed the entire Forbes matter to arbitration and thus brushed aside the company's contention that section 21, providing that hiring decisions are not arbitrable, was applicable. The court, however, did not explain its rejection of the company's argument, nor did it make factual findings on that point.

This gap in the record leads us to vacate the district court's order and remand the matter for further proceedings. The district court must determine, by extrinsic evidence if necessary, whether the language of section 21 denying arbitration applies to the preliminary determination of status as well as to the act of rejection itself. If the answer to that inquiry is affirmative, the disagreement over the meaning of the term "applicant" is not arbitrable and the court must determine Forbes' status. In that event, if the court concludes that Forbes was an "employee," the grievance must be sent to an arbitrator. If the court finds that Forbes was an "applicant," a declaratory judgment for the company must be entered.

If the district court finds that section 21 does not itself preclude arbitrating Forbes' status, the court should then assess whether the company has produced strong and forceful evidence of the parties' intention to remove the issue of status from the general arbitration clause. If the company meets that burden, the court itself must then resolve the status dispute. If the employer fails to carry its burden, the narrow question of whether Forbes qualifies as an "applicant" should be sent to an arbitrator for initial determination.

If the arbitrator decides that Forbes comes within the meaning of an "applicant" under section 21, the arbitrator's task is finished because the parties have agreed that "applicant" disputes are not arbitrable. Consequently, the case must be terminated at that point. If, however, the arbitrator finds that Forbes was an "employee" within the scope of section 5, the arbitrator should then proceed to address the merits of the wrongful discharge grievance filed by the union.

In adhering to this procedure, the district court will not be forced to decide the merits of the dispute between the parties. If required to pass on the question of status because that issue lies beyond the reach of the arbitration clause, the court will be venturing no farther than necessary into substantive issues.

The order of the district court will be vacated and the matter remanded for further proceedings consistent with this opinion.