**GENERAL ELECTRIC COMPANY, Plaintiff,**

v.

**TEAMSTERS LOCAL UNION NO. 676, AN AFFILIATE OF the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant.**

Civ. A. No. 89–413.

United States District Court,
D. New Jersey.

Aug. 7, 1989.

John H. Leddy and Michael G. Tierce, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiff.

David B. Fox, Tomlin, Clark & Hopkin, Haddonfield, N.J., for defendant.

## OPINION

RODRIGUEZ, District Judge.

This matter comes before the court on plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant has filed a crossmotion for summary judgment. The court heard oral argument on July 14, 1989 and required defendant to file an affidavit to clarify an ambiguity with respect to the subject matter of the grievance. The hearing was continued without date. Defendant filed an affidavit on July 24, 1989. Upon review of the filed affidavit and for the reasons set forth below, the court will grant summary judgment for defendant.

## I.

Defendant, Teamsters Local Union No. 676 (hereinafter Union), is the exclusive bargaining representative of the Automobile Mechanics, Automobile Mechanic Helpers, Truck Drivers and Truck Driver Helpers at General Electric's Camden plant. On August 22, 1988, General Electric's predecessor, RCA entered into a collective bargaining agreement with Local 676 which continues in effect until August 31, 1991. On November 28, 1988, the union filed a grievance which stated: "For the past three or four years, the company has refused to replace drivers who, for a number of reasons, have left the company. The Union is requesting that laid-off drivers with seniority recall rights be recalled back to work." Plaintiff General Electric Company (hereinafter GE) filed a complaint on January 25, 1989 seeking a declaratory judgment that the grievance was not arbitrable. Plaintiff then filed an amended complaint on February 10, 1989 and moved for a preliminary injunction to enjoin arbitration pending resolution of the case. Following oral argument on April 7, 1989 the court denied plaintiff's motion for injunctive relief. The parties then agreed to resolve the issue through crossmotions for summary judgment.

## II.

Plaintiff argues that the issue submitted to the American Arbitration Association is not arbitrable for several reasons. First, plaintiff argues that the union has not identified a specific provision of the collective bargaining agreement which General Electric allegedly violated. Plaintiff contends that a review of various contract provisions demonstrates that GE never contracted to arbitrate the issue of replacement of drivers who left GE's employment.[1] Specifically, plaintiff argues that the grievance usurps the exclusive management right of GE to determine how many employees it will employ in its work force and requires GE to fill job vacancies with employees which its level of business no longer needs. Plaintiff submits an affidavit of Alan E. Matt, Manager of Human Resources for GE's Camden facility, as support that the company never contracted to arbitrate the instant dispute.

Plaintiff next argues that the narrow arbitration clause as well as other evidence distinguishes this case from *E.M. Diagnostic Systems, Inc. v. Local 169*, 812 F.2d 91 (3d Cir.1987). In *E.M. Diagnostic*, the arbitration clause provided for arbitration of "[a]ny dispute arising out of a claimed violation of the agreement." *Id.* at 92. To the contrary, GE's arbitration clause provides for arbitration only of disputes "with respect to the interpretation or application of any provision of this Agreement." Agreement at 8.01. Plaintiff argues that the language of its arbitration clause mirrors the clause discussed in *Boeing Company v. International Union U.A.W.*, 231 F.Supp. 930 (E.D.Pa.1964), *aff'd* 349 F.2d 412 (3d Cir.1965)[2] as opposed to the clause in *E.M. Diagnostic*. Thus, plaintiff argues that as in *Boeing*, there is no provision, specific or otherwise, which relates to the matter in dispute.

GE further argues that under *E.M. Diagnostic*, the court must review not only the language of the arbitration clause but also must determine whether the language of the contract expressly excludes the dispute from arbitration and whether there is any other "forceful evidence" excluding the dispute from arbitration. GE then asserts

---

**1.** In support, plaintiff points to Paragraph 8.01 of the General Agreement captioned GRIEVANCE PARTIES AND DEFINITIONS which provides for arbitration "with respect to the interpretation or application of any provision of this Agreement" and to Paragraph 8.06 captioned GRIEVANCE STEPS AND REPRESENTATIVES OF THE PARTIES THEREIN which provides in part that "[i]n no event shall the Arbitrator modify or amend the provisions of this General Agreement." Plaintiff also cites Paragraph 2.04 captioned RECOGNITION OF RIGHTS AND FUNCTION OF MANAGEMENT which provides in part that "[s]ubject only to the express provisions of this Agreement, the Union agrees that supervision, management and control of the Company's business, operations and plants are exclusively the function of the Company...."

**2.** The agreement in *Boeing* limited arbitration to any grievances which involved the "interpretation or application of the provisions of this agreement." 231 F.Supp. at 931.

that the bargaining history of the parties and the language of the General Agreement constitutes the equivalent of an express exclusion of the present dispute from arbitration. In addition, GE contends that unlike *E.M. Diagnostic,* which involved a dispute over the subcontracting of alleged bargaining-unit work, this dispute involves the size of GE's workforce and thus is clearly within the exclusive management rights clause.

Finally, GE asserts that if the present dispute were found to be arbitrable, the arbitrator would have to establish contractual provisions for job replacement and thus would be creating a new term and condition of employment contrary to the general agreement.[3]

In opposition to GE's motion and in support of its motion, the Union first cites provisions of the agreement which it claims relate to the filed grievance. Specifically, the Union cites paragraph 11.01 captioned RULES APPLICABLE TO LAYOFFS AND REHIRING, and paragraph 15.07 captioned LEASED OR HIRED EQUIPMENT.[4] The Union next argues that there is no showing that the parties intended the exclusive rights paragraph 2.04 to encompass recall rights of employees with senior-

ity. In fact, the Union argues that provisions relating to layoffs and rehiring and leased or hired equipment indicate that the parties intended otherwise.

Next the Union asserts that GE has argued the merits of the grievance as opposed to the narrow issue of whether the dispute is arbitrable. The Union argues that the case falls under the zone of interest test enunciated in *E.M. Diagnostic.*[5] Finally, the Union asserts that there is no express provision limiting arbitration on this issue and that the bargaining history does not provide any indication of whether the parties' minds ever met on the issue of excluding subcontracting grievances from arbitration.

### III.

The Third Circuit recently summarized the principles governing arbitration delineated by the Supreme Court in the *Steelworkers Trilogy*[6] and reiterated in *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986):

First, as arbitration is a matter of contract, a party cannot be required to arbitrate any dispute which it has not agreed to submit to arbitration. Second, the

**3.** Plaintiff states that the General Agreement contains provisions applicable to determining the order in which laid off employees are called back to work but contends that the decision to recall is not arbitrable and is an exclusive function of management.

**4.** The relevant sections provide:
Paragraph 11.01 RULES APPLICABLE TO LAYOFFS AND REHIRING:
Should layoffs for lack of work or rehiring thereafter become necessary, the Company shall act in accord with the provisions of Paragraph 10.01. No new employes will be hired until all laid off employes in the occupation affected who desire employment have been rehired.
Paragraph 15.07 LEASED OR HIRED EQUIPMENT:
The Company may not lease or hire outside equipment to supplement its own equipment unless all of its available usable equipment is working. No outside driver shall be permitted to operate leased or hired equipment unless and until all available employes on the seniority list of the Company have been assigned to work in seniority order; this provision shall not apply to specialized equipment

not normally driven by the Company's employes. This provision shall in no way limit the Company's use of common or contract carriers, provided, that if the Union at any time believes such use is excessive and so informs the Company, the Company will discuss such use with the Union.
The court notes that throughout the relevant terms of this agreement, the word "employee" is spelled "employe."

**5.** The Union contends that in the *Boeing* case, the distribution of Christmas turkeys was unrelated to any interest protected by the agreement, whereas in this case the recall of Union members with seniority rights is clearly within the zone of interest protected by this agreement.

**6.** The famous *Steelworkers Trilogy* consists of the following Supreme Court cases: *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

question of arbitrability, *i.e.*, whether a collective-bargaining agreement creates a duty for the parties to arbitrate a particular grievance, is undeniably an issue for judicial determination unless the parties clearly and unmistakably provide that an arbitrator will decide the issue. Third, a court in deciding whether the parties have agreed to submit a particular grievance to arbitration is not to rule on the potential merits of the underlying claims even if a party's position appears frivolous. Fourth, when a contract contains an arbitration clause, there is a presumption of arbitrability of a grievance so that an order to arbitrate a grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Beck v. Reliance Steel Products*, 860 F.2d 576, 579 (3d Cir.1988) (citing 475 U.S. at 648–49). In addition, this case is also governed by the Third Circuit's zone of interest test enunciated in *E.M. Diagnostic*. In *E.M. Diagnostic*, the court held that "a claimed contract violation comes within the scope of an arbitration clause of this character when the subject matter of the grievance is one that is within the zone of interests that have received protection in the collective bargaining agreement." 812 F.2d at 95. The court set forth a three part approach in determining whether a dispute was arbitrable: "(1) Does the present dispute come within the scope of the arbitration clause? (2) does any other provision of the contract expressly exclude this kind of dispute from arbitration? and (3) is there any other 'forceful evidence' indicating that the parties intended such an exclusion?" *Id.* In addition, a court must recognize that when there is an arbitration clause "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. at

1419 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)) (emphasis added).

### A.

■ GE first argues that the zone of interest test is inapplicable because the clause in its agreement differs from the *E.M. Diagnostic* clause. This argument is unpersuasive. There does not appear to be significant difference in the character of the *E.M. Diagnostic* clause which provides for arbitration for "any dispute arising out of a claimed violation of this Agreement" and the language of the clause at hand which provides for arbitration "with respect to the interpretation or application of any provision of this Agreement." Both clauses direct attention to the agreement, the first toward disputes arising from violations of the agreement, the second toward disputes with respect to "interpretation or application" of provisions of the agreement. GE's clause involves *interpretation* of provisions and the word interpretation connotes as flexible a character as the *E.M. Diagnostic* language of "arising out of." Thus, the zone of interest test is applicable to this case.

### B.

■ Prior to application of this test, the court must first identify the subject matter of the grievance. It is clear that the court must focus on the substance of the grievance as opposed to the phrasing of the grievance. *See Morristown Daily Record v. Graphic Communications Union, Local 8N*, 832 F.2d 31, 34 (3d Cir.1987). The dispute here centers on the replacement of drivers and the right of laid-off drivers with seniority rights to be recalled. GE argues that the grievance usurps the exclusive management right to determine the number of workers the company needs to employ. In addition, GE points to the affidavit of Alan Matt, manager for the company's Camden plant, who states that GE would not discuss the replacement of drivers, Matt Affidavit at ¶ 11, and that "the general agreement contains no provision

addressing the issue of replacing drivers." *Id.* at ¶ 13. The union counters that the grievance squarely falls within the provisions of the agreement.

At oral argument, this court focused on identifying the substance of the vaguely phrased grievance. The court stated that if the grievance raised the issue of whether GE was hiring outside employees or leasing equipment, then the grievance fell within the zone of interests protected by the agreement, specifically, Articles 11, paragraph 11.01 and Article 15, paragraph 15.-07. However, the court stated that it would be a closer question of whether the dispute was arbitrable if the substance of the dispute was recall rights of employees when the company was reducing the work force. The court, following Third Circuit precedent, then ordered the union to file within 10 days of the hearing an affidavit further defining the subject matter of the grievance. *See Morristown Daily Record,* 832 F.2d at 35.[7] The court, wary of venturing into the merits of the dispute, did not permit GE to file any responsive papers to the affidavit. *See id.* (district court should venture "no farther than necessary into substantive issues").

On July 24, 1989 the union filed an affidavit of Mark Devine, chief steward for Local Union No. 676. In his affidavit, Devine avers that

> General Electric Company has utilized leased or hired outside equipment on occasions although there were available Local Union No. 676 workers on the seniority list.
>
> It is my understanding that this is one of the issues raised by the grievance dated November 28, 1988 filed by John P. Greeley.

Devine affidavit at ¶ 2–3. After review of the supporting papers, the grievance, and in particular the Devine affidavit, this court concludes that the substance of the grievance centers on the replacement and recall rights of drivers when the company has allegedly "leased or hired outside equipment" and presumably outside drivers.

### C.

It must now be determined whether the subject matter of this dispute is within the zone of protected interests under the collective bargaining agreement. It is clear that several provisions protect seniority rights of workers and recall rights. Section 10.01 entitled Seniority Policy provides in part that the company and union "accept the principle of employe Seniority based upon continuous service credit and the other terms and conditions of this General Agreement." Article 11, paragraph 11.01, entitled Rules Applicable to Layoffs and Rehiring provides:

> Should layoffs for lack of work or rehiring thereafter become necessary, the Company shall act in accord with the provisions of Paragraph 10.01. No new employes will be hired until all laid off employes in the occupation affected who desire employment have been rehired.

In addition, paragraph 15.07 provides in part that

> [n]o outside driver shall be permitted to operate leased or hired equipment *unless and until all available employes on the seniority list of the Company have been assigned to work in seniority order;* this provision shall not apply to specialized equipment not normally driven by the Company's employes. (emphasis added).

Based on these provisions and because "[d]oubts shall be resolved in favor of coverage," *see Warrior & Gulf,* 363 U.S. at 583, 80 S.Ct. at 1353, the court finds that the subject matter of the Union's grievance comes within the zone of the Union's protected interests under the collective bargaining agreement. Therefore, the grievance is a dispute "with respect to the interpretation or application of any provision of" the agreement and comes within the scope of the arbitration clause.

---

**7.** In *Morristown Daily Record,* the Third Circuit remanded to the district court to determine, "by extrinsic evidence if necessary," whether the language of the arbitration clause applied to the preliminary determination of status of an employee as well as to the rejection of the employee. 832 F.2d at 35.

■ The second question the court must address is whether the agreement expressly excludes this dispute from the arbitration procedure. A review of the agreement demonstrates that neither the exclusive rights paragraph 2.04 nor any other provision limits arbitration of the present grievance.

■ Finally, the court must determine whether there is "forceful evidence" indicating that the parties intended to exclude a dispute of this kind from arbitration. Here, GE points to the Matt affidavit as support that the company never contracted to arbitrate the instant dispute. However, even considering the affidavit, there is nothing in the history of the bargaining to indicate that there was an intent to exclude the grievance from arbitration. As the court in *E.M. Diagnostic* stated:

> [T]he fact that the Union sought to negotiate a specific limitation on the Company's right to subcontract work does not demonstrate that the Union viewed the prior contract as containing no implied limitations. More importantly, however, even if it did suggest that the Union held this view, this bargaining history would provide us with no indication of whether the parties' minds ever met on *the issue of excluding subcontracting grievances from arbitration.*

812 F.2d at 97 (emphasis in original).

### V.

In conclusion, it is clear that the Union grievance should proceed to arbitration and that the union is entitled to summary judgment. Under the dictates of *AT & T Technologies,* 475 U.S. at 650, 106 S.Ct. at 1415, the court will not address the merits of the grievance.

An appropriate order will be entered.

### ORDER

For the reasons set forth by this court in an opinion filed even date;

IT is on this 7th day of August, 1989 hereby ORDERED that plaintiff's motion for summary judgment is DENIED; and

IT IS FURTHER ORDERED that defendant's motion for summary judgment on plaintiff's declaratory complaint is hereby GRANTED.