## UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 464A, Plaintiff–Petitioner,

v.

## FOODTOWN, INC. et al., Defendants–Respondents.

### No. CIV.A. 02–4987(JCL).

United States District Court,
D. New Jersey.

April 19, 2004.

George R. Murphy, Michael T. Anderson, Arlus J. Stephens, Davis, Cowell & Bowe, LLP, Washington, DC, John M. Agnello, Carella Byrne Bain, Gilfillan, Cecchi, Stewart & Olstein, Roseland, NJ, for plaintiff.

Jedd E. Mendelson, Lisa I. Fried-Grodin, Grotta, Glassman & Hoffman, Roseland, NJ, for defendants.

## MEMORANDUM AND ORDER

LIFLAND, District Judge.

Plaintiff United Food and Commercial Workers Union, Local 464A ("the Union") moves to compel arbitration of its dispute with Defendants Foodtown, Inc. ("Foodtown") and fourteen Foodtown member stores[1] ("Foodtown Members") pursuant

---

**1.** Foodtown Members include Nicholas Markets, Foodtown of Mount Tabor, Fairview Partners, LLC, Food Circus Supermarkets, Franelen, Inc., L.J.V., Inc., Manyfoods, Inc.,

to a collective bargaining agreement (the "Agreement"). Defendants oppose Plaintiff's Motion and cross move for a declaratory judgment that (1) the dispute is not arbitrable and (2) that Foodtown is not party to the Agreement. For the reasons set forth herein, Plaintiff's Motion will be granted and Defendants' Cross–Motion will be denied.

## BACKGROUND

Foodtown administers a cooperative of grocery stores operating in New Jersey and New York, which is owned by the members of the cooperative. The Foodtown Members each operate one or more supermarkets trading under the name "Foodtown." Foodtown Members buy products and advertise jointly, use the Foodtown® name, and sell private label merchandise bearing the Foodtown® label.

Foodtown does not own or operate any supermarkets or employ any employees in the bargaining unit represented by the Union. It provides support infrastructure and services for its members, but is not itself a retail supermarket operator. Foodtown personnel perform functions which are necessary or incidental to the delivery of services to Foodtown's Members. Such personnel are employees of Foodtown.

The Foodtown cooperative controls its members' operation of Foodtown stores, enforced by economic sanctions. According to the Foodtown Bylaws, Members must comply with the cooperative's Trademark Utilization Manual and with all health, safety, image, sanitation, and operational requirements enforced by the coop-

erative's professional staff. Bylaws, Linkin Cert. Ex. A, Article V, §§ 1, 7. The Foodtown cooperative administers specific "Store Sanitation" and "Image and Operations" policies, subject to enforcement by the cooperative. Bylaws, Linkin Cert. Ex. B. ¶ 7. The Foodtown cooperative controls all Foodtown advertising. *Id.* ¶¶ 3, 5–6. The Foodtown cooperative controls the type of beef offered in Foodtown stores, and "Foodtown Store Operations supervisors ... make periodic inspections to make sure that these regulations are being strictly adhered to." *Id.* ¶ 9. Foodtown's Board of Directors is authorized to assess a minimum mandatory punishment of $1,000 per violation of the cooperative's beef policies. *Id.* ¶ 9(h).

### A. The Agreement

The Union is party to a collective bargaining agreement with Foodtown covering the Union's jurisdiction in New Jersey and parts of New York. The Agreement is signed "for Foodtown Supermarkets" [2] by "Ronald Ginsberg, President." On December 20, 1998, when the Agreement was signed, Mr. Ginsberg was the President of Foodtown and the President of Food King, a Member participating in joint bargaining with the Union.

The cover of the Agreement reads, "Agreement By and Between Foodtown and UFCW Local 464A." The name "Foodtown" appears as Foodtown cooperative's trademarked logo. The preamble states that the Agreement is between the Union and an "Employer," defined collectively as "those individual employers trading under

Francis Markets, Ltd., Norkus Enterprises, Inc., V & V Supermarkets, Inc., West End Foodtown, Supermarket Acquisition, 70 Linden Food Corp., and 6 McLean Food Corp.

**2.** Defendants maintain that there is no such legal entity as "Foodtown Supermarkets" and that previous Agreements were signed by oth-

er Foodtown Members "For the Individual Employers Trading Under the Name Foodtown." Linkin Cert. ¶ 10. However, as the Union points out, Foodtown has consistently held itself out as "Foodtown Supermarkets." Hanley Cert., Exs. D and E (letterhead identifying cooperative as "Foodtown Supermarkets").

the name Foodtown Supermarkets." Article 1 of the Agreement provides: "the Employer hereby recognizes the United Food and Commercial Workers International Union, Local # 464A, affiliated with the AFL–CIO, as the exclusive representative of its meat, poultry, fish, appetizer and delicatessen department employees, both full-time and part-time, in the present and future stores of the Employer located within the present and future jurisdictional area of said Local Union within the States of New Jersey and New York." Compl., Ex. A., Article 1.

Further, the Agreement establishes a grievance-arbitration procedure to resolve "[a]ny disputes, differences or grievances arising out of the interpretation, application, breach or claim of breach of the provisions of this Agreement" at the request of either party. Article 9(D)(2). The Agreement states that all such disputes "shall be settled solely and exclusively" by use of the procedure. An arbitrator's decision "shall be final and binding on the parties." Article 9(E).

### B. Collective Bargaining Negotiations

Foodtown represents that it does not participate as a party in interest in collective bargaining negotiations with the Union. Linkin Cert. ¶ 7. Alfred Fiergang, the outside attorney who represents the Members participating in the joint bargaining, is engaged and paid by Foodtown on behalf of those Members. *Id.* John Durkin, Foodtown's Vice President, joins the negotiations. His role, according to Foodtown, is that of representing members that participate in joint bargaining with the Union and have authorized him to represent their interests in negotiations. *Id.* Members that do not employ personnel represented by the Union are not part of this joint bargaining process. *Id.* ¶ 8. Those that participate in the joint bargaining do so as part of a larger industry negotiation and then engage in separate negotiations over so-called local issues. *Id.* ¶ 9.

### C. Non–Union Stores

In or about May 2002, three grocery stores in Dutchess County, New York (the "Dutchess County Stores") began holding themselves out as Foodtown Supermarkets. These three stores began trading under the "Foodtown" name pursuant to an agreement with Foodtown. Although the stores are within the geographic jurisdiction of the Union, the meat and deli employees at these stores are not represented by the Union or any union. PSK, a member of Foodtown, operates the Dutchess County stores pursuant to the Foodtown By–Laws.

On June 28, 2002, Union Recorder Frank Hanley filed a grievance under Article 9(D) of the Agreement, protesting the use of the Foodtown name at the Dutchess County Stores. Asserting that the Employer was prohibited from licensing the FOODTOWN name to a non-union store within the geographic jurisdiction of the Union, Hanley requested that Foodtown cease and desist from licensing the Foodtown name to non-union stores within the Union's jurisdiction. The Union further stated that, absent settlement of the grievance, it would invoke the arbitration provision of the Agreement.

On July 9, 2002, Mr. Fiergang responded to the Union's letter and stated that the Union's grievance lacked merit. The Union replied by letter dated July 23, 2002, clarifying that its grievance was directed at the Foodtown entities with whom the Union had an agreement and that the Agreement prevented Foodtown Supermarkets from allowing a non-union store to use the name "Foodtown" within the Union's jurisdiction. The Union reiterated its request to arbitrate this dispute. Mr. Fiergang replied by stating that "the Union's grievance misunderstands the con-

tract, the facts and the law." Mr. Fiergang did not agree to arbitrate the dispute, nor did he subsequently agree to do so when, in another letter, the Union informed that it would file suit to compel arbitration.

### ANALYSIS

The Federal Arbitration Act ("FAA") requires a summary order for arbitration where the pleadings show that the parties are bound by the agreement, and that the agreement provides for arbitration. The FAA pertains to all employment contracts outside the transportation and maritime industries. *Circuit City Stores v. Adams,* 532 U.S. 105, 114–15, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). Whether an arbitration provision in a collective bargaining agreement "creates a duty for the parties to arbitrate the particular grievance" is a matter to be determined in the first instance by a court. *AT & T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Morristown Daily Record, Inc. v. Graphic Communications Union,* 832 F.2d 31, 33 (3d Cir.1987). A court may also order arbitration based on the admitted facts in the pleadings under Federal Rule of Civil Procedure 12(c). Judgment on the pleadings is proper if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *CoreStates Bank, N.A. v. Huls America, Inc.,* 176 F.3d 187, 193 (3d Cir.1999).

The dispute here involves three Dutchess County stores operating as Foodtown Supermarkets in the Union's jurisdiction, the meat and deli employees of which are not represented by the Union. At issue is whether Foodtown violated the Agreement when it licensed the stores to operate as Foodtown Supermarkets in the Union's jurisdiction, notwithstanding the Agreement's recognition of the Union for "all present and future stores of the Em-

ployer" in New Jersey and parts of New York. The Union seeks to arbitrate the dispute pursuant to Article 9 of the Agreement. Foodtown seeks to enjoin arbitration, arguing that (1) the Union has misinterpreted the Agreement insofar as it does not transfer or assign any interest in the Foodtown trademark to the Union and thus the dispute is not arbitrable; (2) Foodtown is not bound by the Agreement; and (3) the Union's attempt to force Foodtown to cease doing business with PSK renders it an unlawful "hot cargo agreement," whereby a union "employ[s] a collective bargaining agreement with one employer as a means of effectuating its object to coerce another employer to unionize." *A. Duie Pyle v. NLRB,* 383 F.2d 772, 777 (3d Cir.1967). The Court will address each of these points, in turn.

The arbitration clause in the Agreement establishes a broad right of arbitration. *See E.M. Diagnostic Sys., Inc. v. Local 169 Int'l Bhd. of Teamsters, Chauffers, Warehouseman and Helpers of Am.,* 812 F.2d 91, 93–95 (3d Cir.1987) (concluding that clause providing arbitration for "any dispute arising out of a claimed violation of this Agreement" broadly covers all disputes); *Public Serv. Elec. & Gas Co. v. Local 94 Int'l Bhd. of Elec. Workers,* 140 F.Supp.2d 384, 395–96 (D.N.J.2001) (holding same for clause covering "the interpretation or application of any provision of this Agreement"); *General Elec. Co. v. Teamsters Local 676,* 718 F.Supp. 400, 403 (D.N.J.1989) (same). In *E.M. Diagnostic Sys.,* the Third Circuit held that determining whether a dispute falls within the scope of an arbitration clause requires an analysis of whether "the subject matter of the grievance is one that is within the zone of interests that have received protection in the collective bargaining agreement." 812 F.2d at 95.

The Court concludes that .the instant dispute falls within the broad language in

the Agreement providing for arbitration to resolve "[a]ny disputes, differences or grievances arising out of the interpretation, application, breach or claim of breach of the provisions of th[e] Agreement." Compl., Ex. A., Article 9(D). The trade name "Foodtown" and the association between union representation and stores trading under that name are the subject of the Agreement. "Employer" is defined by reference to use of the Foodtown trade name. Compl., Ex. A, at 1. Moreover, the Agreement reflects that the public perception of Foodtown stores as union stores is a matter of value to the parties. *Id.*, Art. 15. It follows that the association between stores trading under the name Foodtown and union representation is within the "zone of interests" covered by the Agreement.

This matter plainly involves the "interpretation" and "breach or claim of breach" of the Agreement. Both Plaintiff (in the grievance) and Defendants frame the dispute the same way: whether Foodtown violated the Agreement when it licensed its name and trademark to three non-union stores owned and operated by PSK. That dispute is subject to arbitration. The Court recognizes Defendants' argument that the instant dispute is outside the scope of Article 9 because the Agreement does not confer any rights upon the Union regarding the Foodtown Trademark, but Defendants argue too much. The issue of whether the Agreement confers such a right is one of contract interpretation that is subject to arbitration.

Next to be determined is who is bound by the Agreement. Defendants do not dispute that Foodtown Members are bound by the Agreement. Answer ¶ 7. This is clear from the preamble stating that the Agreement is made between the Union and an "Employer," defined collectively as "those individual employers trading under the name Foodtown Supermarkets." Defendants' argument as to the Members is that they cannot be held responsible for Foodtown's, the cooperative, action and that the Union seeks relief that is impossible for the Members to perform. There being no dispute that Foodtown Members are bound by the Agreement, and the Court having concluded that this dispute is arbitrable, the Members must arbitrate this dispute. Whether the Members are ultimately held responsible for the actions of the cooperative and whether they are capable of performing the relief sought are matters for the arbitrator to decide.

■ Defendants then argue that the cooperative-as distinguished from Foodtown Members-is not bound to the Agreement at all. While this is a close question, the Court is satisfied that Foodtown is bound to the Agreement for purposes of arbitrating this dispute. *Cf. Rock–Tenn Co. v. United Paperworkers Int'l Union, AFL–CIO*, 184 F.3d 330, 337 (4th Cir.1999) (holding that parent corporation's signature, with no limitations as to the division it covered, bound the parent to the contract's ban on subcontracting); *Amalgamated Clothing & Textile Workers v. Ratner Corp.*, 602 F.2d 1363, 1370 (9th Cir.1979) (concluding that where president of parent corporation signs contract without clear identification of the subsidiary allegedly bound, parent is bound to arbitrate). The Agreement is signed "for Foodtown Supermarkets" by "Ronald Ginsberg, President." Foodtown's disavowal of the Agreement is strained, particularly in light of the fact that it is the sole employer signatory of that Agreement. Compl., Ex. A.[3] Moreover, once again Defendants' ar-

---

**3.** It had been Foodtown's practice to have the collective bargaining agreement signed by the incumbent President of the cooperative: the

1991–94 Agreement was signed by Robert Davidson and the 1994–98 Agreement was

gument proves too much, for Mr. Ginsberg's signature could not have bound other (concededly bound) Members if, as Foodtown suggests, he were only signing as President of Food King and not in his capacity as President of Foodtown.

Also, the Agreement itself may be read to include Foodtown as a bound employer. The Agreement defines "Employer" as "those individual employers trading under the name Foodtown Supermarkets." The Labor–Management Relations Act ("LMRA") is the statutory backdrop for all collective-bargaining agreements and governs all actions for breach of labor agreements. The LMRA, 29 U.S.C. § 152(2), defines "employer" to include any agent of an employer: "The term 'employer' includes any person acting as agent of an employer directly or indirectly ..." 29 U.S.C. § 152(2). "There is no doubt that an employers' association ... which negotiates collective bargaining contracts on behalf of its members ... is an employer for the purposes of [the Act.]" *NLRB v. Mountain Pacific Chapter of the Assoc. Gen. Contractors*, 270 F.2d 425, 428 (9th Cir.1959). Absent a clear indication that the parties intended the term "employer" to mean something else, the Court presumes that the LMRA definition applies. *See Hugo Boss Fashions v. Federal Ins. Co.*, 252 F.3d 608, 618 (2d Cir.2001) ("[W]here contracting parties use terms and concepts that are firmly rooted in federal law, and where there are no explicit signals to the contrary, we can presume that the prevailing federal definition controls."); *see also Williams v. Stone*, 109 F.3d 890, 896 (3d Cir.1997) (applying "general rule that parties to a contract are presumed to contract mindful of the existing law and that all applicable or relevant laws must be read into the agreement of

the parties"). Viewed through the lens of the LMRA, Foodtown is an employer subject to the Agreement insofar as it acted as the bargaining agent for Foodtown Members.

Even as a non-signatory to the Agreement, Foodtown would be required to arbitrate these claims by virtue of the fact that its interests are substantially intertwined with that of its Members. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1121, 1122 (3d Cir.1993) ("[A]rbitration agreements may be upheld against non-parties where the interests of such parties are directly related to, if not congruent with, those of a signatory."). *Cf. J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320–21 (4th Cir. 1988) (explaining that where allegations against "a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.").

Further buttressing the Court's conclusion is the analogy of trade associations negotiating labor contracts for their members. In those situations, the trade association itself is bound by the contract. *See, e.g., Teamsters Local 249 v. Western Pa. Motor Carriers Ass'n*, 660 F.2d 76, 81–84 (3d Cir.1981) (construing labor contract to bind Association, and not just some of its constituents). Here, the Union signed the Agreement "for and on behalf of its members ..." Compl., Ex. A, Preamble, p. 1. If Foodtown's signature only binds its members, but not the cooperative itself, the Union could arguably make the same claim. However, federal labor policy abolished the common-law rule that unincorporated associations like unions could avoid

---

signed by Martin Vitale. Linkin Cert., Ex. D. Messrs. Davidson and Vitale were the Presidents of the Foodtown cooperative at the time

those agreements were signed. Hanley Cert. ¶ 5.

liability under labor contracts they negotiated on the basis that they were only agents of their members. 29 U.S.C. § 185(b); *Denver & Rio Grande Western R.R. Co. v. Brotherhood of R.R. Trainmen,* 387 U.S. 556, 559, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967). Foodtown should be held to its obligation to arbitrate disputes under the Agreement just as the Union is held to its obligation to arbitrate disputes under the Agreement it signed on behalf of its members. Article 9(D)(2).

■ Finally, Foodtown argues that the grievance is illegal because "the Union seeks to have an arbitrator order a cessation of business with PSK," as the non-union Foodtown operator. Foodtown argues that to do so would violate § 8(e) of the National Labor Relations Act, providing that

> [i]t shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible [sic] and void . . . .

29 U.S.C. § 158(e). Assuming that the relief sought by the Union is relevant to the threshold question of arbitrability, the Union has limited its grievance in such a way as to minimize the Defendants' concerns. The Union seeks only to preserve the alleged contractual right to identify Foodtown stores within its jurisdiction as Union stores; it does not seeks to prevent all or any business dealings with PSK. Pl.'s Opp. to Dfs.' Cross–Mot. at 26 ("The Union does not ask for any arbitration award that would prevent Foodtown and its members from doing business with non-union operators in the Union's jurisdiction. It merely asks for enforcement of its contract that the 'present and future stores' of operators 'trading under the name Foodtown' be kept distinct by trade name from non-union operations.").

For the foregoing reasons, the Court concludes that the dispute concerning the Dutchess County Stores is arbitrable and that Foodtown, as well as Foodtown Members, must submit to arbitration in accordance with the Agreement. Having so concluded, the Court will deny Defendants' request for a declaratory judgment to the contrary.

Accordingly, **IT IS** on this 19th day of April 2004

**ORDERED** that the Motion of Plaintiff United Food and Commercial Workers Union, Local 464A to compel arbitration is granted; and it is further

**ORDERED** that the Cross–Motion of Defendants Foodtown, Inc. and Foodtown Members for a declaratory judgment is denied.