

1994 Decisions

10-7-1994

# Bensalem Twp. v. Int.nat'l Surplus Lines Ins. Co.

Precedential or Non-Precedential:

Docket 93-1071 & 93-1072

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Bensalem Twp. v. Int.nat'l Surplus Lines Ins. Co." (1994). *1994 Decisions.* Paper 154.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/154

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 93-1071 and 93-1072

_____

BENSALEM TOWNSHIP,

Appellant

v.

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY;
CRUM & FORSTER MANAGERS CORPORATION (ILL),

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 91-05315)

_____

Argued on August 2, 1993

Before:  STAPLETON, HUTCHINSON and ROTH, Circuit Judges

(Opinion Filed: October 7, 1994)

_____

Neil A. Morris, Esquire (Argued)
Neil A. Morris Associates, P.C.
The Curtis Center, Suite 1100
Independence Square West
601 Walnut Street
Philadelphia, PA 19106
        Attorney for Appellant

Peter G. Thompson, Esquire (Argued)
Charles I. Hadden, Esquire
Douglas R.M. Nazarian, Esquire
Ross, Dixon & Masback
601 Pennsylvania Avenue, N.W.
North Building
Washington, D.C. 20004-2688

Frank Michael D'Amore, Esquire
Saul, Ewing, Remick & Saul
3800 Centre Square West
Philadelphia, PA 19102
          Attorneys for Appellees

———————

**OPINION OF THE COURT**

———————


ROTH, <u>Circuit Judge</u>:


In this action, plaintiff Bensalem Township (Township) appeals the district court order dismissing its complaint against defendants, International Surplus Lines Insurance Co. and Crum & Forster Managers Corp. (Insurers), for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Township had contracted with Insurers for professional liability insurance covering all civil claims first made against the town or its officials during the policy period. The agreement included a typical exclusion clause that barred coverage of any claims arising from pre-policy litigation. When Township renewed its policy in 1989, Insurers added language expanding the scope of what Township had come to expect as the standard prior litigation exclusion clause. The new exclusion limited coverage to claims completely unrelated to

any prior matter, regardless of whether the matter involved litigation for money damages.  Thereafter, Blanche Road Corp. (Blanche Road), a real estate developer, filed a federal civil rights complaint naming several Township officials as defendants. The lawsuit was the result of years of friction between Blanche Road and Township regarding the development of certain parcels of land located in Township.  After several attempts to obtain coverage under the insurance policy for the cost of defending the Blanche Road litigation, Township filed the instant complaint. The district court subsequently granted Insurers' motion to dismiss, concluding that the Blanche Road lawsuit fell within the express terms of the policy's exclusion clause.  It held that the provision barred coverage because the federal cause of action involved the same underlying facts and circumstances as several pre-policy state disputes.  Township challenges this decision, arguing that the new language added to the exclusion clause is inconsistent with the parties' reasonable expectations. Moreover, Township maintains that the district court erred by not giving it the opportunity to prove its contention through further development of the record.

Township also appeals the district court order imposing a sanction pursuant to Fed. R. Civ. P. 11.  The court imposed a $2000 sanction on Township after finding that it had failed to conduct a reasonable inquiry when it filed a motion to determine the Rule 59(e) motion in the district court while a petition for

rehearing was pending on appeal.  Township contends that the motion was reasonable under the circumstances because a premature appeal does not divest the district court of jurisdiction to consider a pending Rule 59(e) motion.

For the reasons set forth below, we will reverse the dismissal of the complaint and remand for further proceedings consistent with this opinion.  We will also reverse the order imposing a Rule 11 sanction against Township.

I.

Township, a Bucks County, Pennsylvania, municipality, filed its complaint in state court on July 29, 1991.  Insurers subsequently removed the action to the United States District Court for the Eastern District of Pennsylvania.  We accept as true the following allegations, contained in Township's complaint, in light of Insurers' motion to dismiss.  See Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993).

## A. The Insurance Policy

In April 1989, Township renewed its Public Officials' and Employees' Liability Insurance Policy with Insurers for one year, commencing April 15, 1989.  Although aware of the addition to the prior litigation exclusion clause, Township apparently believed it was receiving essentially the same type of insurance policy it had always received from Insurers, subject in essence to the usual exclusions.

The agreement covers any monetary loss up to $1,000,000 for civil claims made during the policy period arising from wrongful acts of the insured.  The policy states:

> A.   The company will pay on behalf of the Insureds all Loss which the Insureds shall be legally obligated to pay for any civil claim or claims first made against them because of a Wrongful Act, <u>provided that the claim is first made during the policy period</u> and written notice of said claim is received by the Company during the policy period.
>
> B.   The Company will reimburse the Public Entity for all Loss for which the Public entity shall be required by law to indemnify the Insureds for any civil claim or claims first made against them because of a Wrongful Act, <u>provided that the claim is first made during the policy period</u> and written notice of said claim is received by the Company during the policy period.

(emphasis added).

While the claims made portion of the policy is identical to that of the prior agreement, there is a significant difference in the policy's exclusion provision.  In the past, the parties had agreed to a typical prior litigation exclusion clause that bars all claims relating to pre-policy lawsuits.  When the policy was renewed, however, Insurers expanded the scope of that provision.  The new exclusion states:

> It is understood and agreed that the insurer shall not be responsible for making any payment for <u>loss in connection with any claim</u> made against any insured <u>based upon, arising out of, or in consequence of or in any way involving</u>:

> (1) any prior and/or pending litigation as of 2/1/89 [pre-policy period] including but not limited to matters before local, state, or federal boards, commissions, or administrative agencies, or
>
> (2) any fact, or circumstance, or situation underlying or alleged in such litigation or matter.

(emphasis added). Insurers added language that effectively restricts coverage to only those claims completely unrelated to any pre-policy dispute, regardless of whether the dispute involved a legal claim covered by the policy.

Township has argued both before us and before the district court that it did not expect that the new exclusionary language would bar claims that had not previously been presented to it as insurable claims, e.g., petitions for injunctive relief or proceedings before administrative agencies.

## B.  The Blanche Road Dispute

In December 1989, Blanche Road named Township and many of its current and former officials and employees in a federal civil rights suit pursuant to 42 U.S.C. § 1983.  See Blanche Road Corp. v. Township, No. 89-9040 (E.D. Pa. filed December 20, 1989).  The suit was the culmination of several years of contention arising from the development of the Blanche Road Industrial Park located in Township.

In 1987, Blanche Road commenced development of certain parcels of land by securing the necessary town building permits

and entering into agreements of sale with several buyers. Subsequently, Township made some financial demands which Blanche Road alleged were not required by any town ordinance. Township then issued a stop work order and cited Blanche Road with certain town ordinance violations. On December 30, 1987, Blanche Road appealed the order to the Town Code Appeals Board. While the appeal was pending, Township revoked Blanche Road's building permits and issued a second stop work order.

Thereafter, on January 20, 1988, Blanche Road filed a complaint in quo warranto in the Court of Common Pleas of Bucks County, Pennsylvania. It sought an order declaring that the Town Code Appeals Board members' appointments were null and void. Blanche Road wanted the members excluded from serving on the Board.

Blanche Road also filed an equity action in state court on February 19, 1988. In that suit, Blanche Road sought injunctive and declaratory relief as well as some ancillary damages. Blanche Road asked the court to enjoin Township from enforcing a stop work order and levying fines or penalties. Moreover, it wanted the court to declare the stop work order null and void. The only damages Blanche Road sought were for the delay of some construction work and certain related interest and wages. The suit was settled when both parties stipulated that the building permits would be reinstated.[1]

---

[1]. We note that there were two other state court proceedings that related to the Blanche Road dispute. Neither of

Blanche Road subsequently filed its federal civil rights complaint alleging that certain Township officials had violated the Due Process Clause by attempting to coerce payments not required by law and by impeding Blanche Road's development of the Industrial Park.  In addition, Blanche Road claimed that Township had violated the Equal Protection Clause by applying different standards from those used for other developers.  This was the first time that Blanche Road filed a federal action against Township seeking money damages.  It was also the first time that Blanche Road raised constitutional claims and the first time that many of the town officials were named as defendants.  A trial was held, and a jury entered a verdict in favor of Blanche Road in the amount of $2,000,000 plus interest, costs, and attorneys' fees.  The district court subsequently granted Township's motion for a new trial.  That trial is apparently still pending.

### C.  Township's Declaratory Judgment Action

Once the <u>Blanche Road</u> federal litigation commenced, Township filed a claim with Insurers under the terms of the
(..continued)
the proceedings were initiated by Blanche Road.  In one case, certain individual owners of lots within the Industrial Park filed a complaint in mandamus naming the Town Board of Supervisors as defendants.  The owners sought to compel the Board to approve certain improvements they made to their property and to release the owners from their obligations under a letter of credit.
In another related case, a Township official swore out a private criminal complaint in District Justice Court against one of Blanche Road's principals.  The complaint related to a dispute over one of the lots in the Industrial Park.

insurance policy.  Township believed it was entitled to coverage because the civil rights complaint was filed during the policy period and it was the first time Blanche Road had filed a federal suit seeking money damages.  Township had not filed a claim with Insurers for any of the prior state Blanche Road proceedings because they involved equitable relief not covered under the general provisions of the policy.

After a dispute arose between Insurers and Township regarding coverage under the policy, Township filed the instant complaint in the Court of Common Pleas for Bucks County, Pennsylvania, seeking both declaratory and monetary relief.  Insurers removed the action to the United States District Court for the Eastern District of Pennsylvania.  Township alleged that the insurance policy covered the Blanche Road litigation and that Insurers had a contractual duty to pay defense costs.  Township also alleged that certain aspects of the policy were ambiguous and should be construed in favor of coverage.

Insurers filed a motion to dismiss Township's complaint for failing to state a claim upon which relief could be granted pursuant to Fed. R. Civ. P. 12(b)(6).  They argued that the policy exclusion barred coverage because the Blanche Road federal litigation involved similar facts and issues as the five prior state proceedings for equitable relief.  While under the former exclusion provision claims would only be barred if they related to prior litigation, Insurers maintained that the language in the

new policy specifically barred claims relating to any prior administrative proceeding or matter.

Township opposed Insurers' motion and in connection with this opposition requested that it be permitted to conduct discovery to demonstrate its reasonable expectation that litigation, such as the Blanche Road case, would be covered by the policy. Township gave the following explanation of the areas in which it needed to take discovery and the underlying reasons for this discovery:

b. Defendants have relied, in their Motion to dismiss, on Endorsement No. 1 as an exclusionary clause, concerning prior claims and litigation. Plaintiff's need to discover what, if any, discussions, explanations or other information Defendants', their agents or representatives gave to the Plaintiff explaining this exclusion, how it would impact on the Township and relate to other conflicting exclusions in the said policy, i.e., § 111 Definition, ¶ 4(a), excluding all claims for "non-money" damages. Written discovery and depositions of Defendants' agents and employees would be necessary.

c. Plaintiff needs to discover prior drafts and Defendants' internal memos and discussions concerning the insurance policy in issue as well as Endorsement No. 1. This, we believe, will also defelop proof that Defendants' generally do not enforce or even attempt to apply Endorsement No. 1 as they have in this case, i.e., to prior uninsurable claims.

d. The instant policy does not define what an insurable claim is except by negative inference in III Definitions, ¶ 4(a), i.e., money damages only. Plaintiff needs to take written and oral discovery on this issue. Plaintiff believes that discovery will reveal that had the 'prior claims and facts related thereto' been timely filed under Defendants' policy, Defendants would have rejected

> the claims anyway. Thus., Plaintiff will be able to prove that Defendants' "prior claim" exclusion, if not ambiguous (but it is), really meant "prior insurable claims."
>
> g. <u>Plaintiff will need to take the depositions of former Bensalem Township officials, representatives and/or employees, who no longer work for the Township, with respect to their knowledge, understanding and discussions with Defendants and their agents concerning the policy, claims and exclusions in issue...</u>

Appellant's Brief at 9 (footnote omitted). Insurers moved to stay discovery pending resolution of their motion to dismiss. The district court granted the stay on March 27. The issue of further discovery was then mooted when, by order entered June 15, 1992, the district court granted Insurers' motion to dismiss.

In its memorandum, dismissing the complaint, the district court held that the policy exclusion expressly precluded coverage because the <u>Blanche Road</u> federal litigation involved the same underlying circumstances as the pre-policy state proceedings. It concluded that the exclusion was unambiguous and should be enforced according to its plain language.

### D. Post-Judgment Proceedings

On June 23, 1992, Township sent a letter to the court, stating that the order was unclear because it did not indicate whether it was with or without prejudice and it did not specify both defendants. Township also stated that, if the dismissal was without prejudice, it would move to file an amended complaint. It appears that Township intended the letter as a motion to amend the district court order pursuant to Fed. R. Civ. P. 59(e). On

July 7, 1992, prior to receiving a response from the court, Township filed its amended complaint.  On July 8, 1992, Township filed a notice of appeal.  On July 9, 1992, the district court denied Township's motion to file an amended complaint.  The order did not address the Rule 59(e) motion.

By order entered October 13, 1992, we dismissed Township's July 8, 1992, appeal for lack of jurisdiction.  Township subsequently filed a petition for rehearing in this Court and a motion to determine the Rule 59(e) motion in the district court.  Insurers filed a response to the district court motion, indicating that the petition for rehearing divested the district court of jurisdiction.  Insurers also filed a motion for sanctions pursuant to Fed. R. Civ. P. 11 stating that it incurred legal fees of $8,800 responding to the "unnecessary" district court motion.  The district court dismissed Township's motion to determine the Rule 59(e) motion for lack of jurisdiction.

On November 30, 1992, we granted Township's request for panel rehearing and issued an opinion affirming and clarifying our earlier decision dismissing Township's appeal for lack of jurisdiction.  We held that the appeal was premature because Township's June 23, 1992, letter to the district court was a Rule 59(e) motion that tolled the time for appeal until thirty days after the district court disposed of the motion.  Fed. R. App. P. 4(a)(4).

On December 2, 1992, Township renewed its motion to determine the Rule 59(e) motion in the district court. By order entered January 14, 1993, the district court denied Township's motion. On the same day, the court entered a separate order, granting Insurers' motion for Rule 11 sanctions. The court awarded Insurers $2000. Township's timely appeals followed.

## II.

The district court had diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review of the district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(6). Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 871 (3d Cir. 1992). We review the district court order imposing Rule 11 sanctions for abuse of discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 385 (1990).

## III.

We first address the issue of whether Township's complaint was properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6). We accept all well-pleaded allegations in Township's complaint as true and construe all reasonable inferences from the avowed facts in favor of Township. We may affirm the dismissal only if it appears certain that no relief could be granted under any provable set of facts. Blaw Knox Retirement Income Plan v.

White Consol. Indus., Inc., 998 F.2d 1185, 1188 (3d Cir. 1993), cert. denied, 114 S.Ct. 687 (1994).

The district court exercised diversity jurisdiction and was obliged to apply the substantive law of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). The parties agree that Pennsylvania law governs this case.

## A. Reasonable Expectations

We find that the district court should not have dismissed the complaint without allowing discovery on the issue of whether the new language added to the insurance policy's prior litigation exclusion clause is inconsistent with Township's reasonable expectation of the type of coverage provided under the agreement. While Township may have known of the change in the language of the exclusion clause when it renewed the policy, it should nevertheless have the opportunity to discover and submit evidence that Insurers had created in it a reasonable expectation that the policy would cover claims such as that presented by the federal Blanche Road litigation.

Insurers dispute the notion that we should consider what the parties' reasonable expectations might have been, arguing that such an inquiry is precluded under Pennsylvania law where the terms of a policy are clear and unambiguous. Indeed, Insurers correctly state what appears to be the general rule in Pennsylvania. Thus, in the run of cases, "[w]here ... the language of the contract is clear and unambiguous, a court is

required to give effect to that language." Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 469 A.2d 563, 566 (1983). Insurers point to the new language added to the exclusion clause which, they argue, expressly bars coverage of the Blanche Road federal litigation because the dispute arises from the same facts and circumstances as the pre-policy state and local proceedings.

As we read the Pennsylvania case law, courts have justified this rule based in part on the supposition that in most cases the language of an insurance policy will provide the best indication of the content of the parties' reasonable expectations. The courts have made it clear that the parties' reasonable expectations are to be the touchstone of any inquiry into the meaning of an insurance policy. Yet

> [a]ny reasonable expectation which would be imputed to the parties by this or any court must necessarily rely upon, and be reasonably consistent with, the written document and phraseology, simply because any interpretation advanced contrary to the contents of the written document could hardly be viewed as "reasonable" to assert; unless good reason in law is advanced for the disregarding of the clearly contrary phraseology.

J.H. France Refractories Co. v. Allstate Ins. Co., 396 Pa. Super. 185, 578 A.2d 468, 472 (1990) (emphasis added), aff'd in part and rev'd in part, 534 Pa. 29, 626 A.2d 502 (1993). See also Tonkovic v. State Farm Mut. Auto. Ins. Co., 513 Pa. 445, 521 A.2d 920, 926 (1987) ("Courts should be concerned with assuring that

the insurance purchasing public's reasonable expectations are fulfilled.") (quoting Collister v. Nationwide Life Ins. Co., 479 Pa. 579, 388 A.2d 1346, 1353 (1978), cert. denied, 439 U.S. 1089 (1979)); Frain v. Keystone Ins. Co., ___ Pa. Super. ___, 640 A.2d 1352, 1354 (1994) ("While reasonable expectations of the insured are the focal points in interpreting the contract language of insurance policies, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous.") (citations omitted); Everett Cash Mut. Ins. Co. v. Krawitz, 430 Pa. Super. 25, 633 A.2d 215, 216 (1993) ("[C]ourts must focus on the reasonable expectation of the insured in an insurance transaction.") (citations omitted); Dibble v. Security of American Life Ins. Co., 404 Pa. Super. 205, 590 A.2d 352, 354 (1991) ("[T]he proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured.  Courts must examine the totality of the insurance transaction involved to ascertain the reasonable expectation of the insured.") (citations omitted); Harford Mut. Ins. Co. v. Moorhead, 396 Pa. Super. 234, 578 A.2d 492, 495 (1990) ("[O]verly-subtle or technical interpretations may not be used to defeat reasonable expectations of insureds."), appeal denied, 527 Pa. 617, 590 A.2d 757 (1991).  Accordingly, in certain situations the insured's reasonable expectations will be allowed to defeat the express language of an insurance policy.

The Pennsylvania Supreme Court first began to carve out exceptions to the general rule in Collister.[2]  The court began its analysis by observing that transactions between insurers and insureds are fundamentally different from those between parties to contracts as envisioned by the common law.

> The traditional contractual approach fails to consider the true nature of the relationship between the insurer and its insureds.  Only through the recognition that insurance contracts are not freely negotiated agreements entered into by parties of equal status; only by acknowledging that the conditions of an insurance contract are for the most part dictated by the insurance companies and that the insured cannot "bargain" over anything more than the monetary amount of coverage purchased, does our analysis approach the realities of an insurance transaction.

---

[2].  The process actually started with Justice Manderino's opinion in Rempel v. Nationwide Life Ins. Co., 471 Pa. 404, 370 A.2d 366 (1977), with which two justices concurred while the remaining three concurred in the judgment without opinion.  The opinion stated: "Consumers ... view an insurance agent ... as one possessing expertise in a complicated subject.  It is therefore not unreasonable for consumers to rely on the representations of the expert rather than on the contents of the insurance policy itself."  370 A.2d at 368.  Moreover, the opinion noted, in response to Nationwide's assertion that allowing the plaintiff's misrepresentation theory to succeed would lead to an increase in fraudulent claims, that the court had "very little sympathy for Nationwide's alleged concerns in view of the fact that its procedures necessitate reliance by a consumer on the representations of an insurance agent."  Id. at 370.  This notion that insurers bring these lawsuits upon themselves through their arcane practices is something of a theme in the Pennsylvania Supreme Court's subsequent cases on the subject.

<u>Collister</u>, 388 A.2d at 1353.  Because of the unique dynamics of this relationship between insurers and insureds, certain principles must guide the interpretation of insurance policies.

> Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled.  Thus, regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents (whether they be applications, conditional receipts, riders, policies, or whatever), the public has a right to expect that they will receive something of comparable value in return for the premium paid.  Courts should also keep alert to the fact that the expectations of the insured are in large measure created by the insurance industry itself.  Through the use of lengthy, complex and cumbersomely written applications, conditional receipts, riders, and policies, to name a just a few, the insurance industry forces the insurance consumer to rely upon the oral representations of the insurance agent.  Such representations may or may not accurately reflect the contents of the written document and therefore the insurer is often in a position to reap the benefit of the insured's lack of understanding of the transaction.

<u>Id</u>.

With <u>Collister</u>, Pennsylvania seemed to have taken a significant step toward adopting the reasonable expectations principle as stated by then–Professor Keeton in his landmark article.[3]  <u>See</u> Roger C. Henderson, <u>The Doctrine of Reasonable</u>

_____

[3].  Robert E. Keeton, <u>Insurance Law Rights at Variance with Policy Provisions</u>, 83 Harv. L. Rev. 961, 967 (1970) (providing the following formulation of the reasonable expectations principle: "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the

Expectations in Insurance Law After Two Decades, 51 Ohio St. L.J. 823, 829 (1990).[4]  Five years later, however, the court appeared to pull back from its enthusiastic endorsement of the doctrine. Indeed, in Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 469 A.2d 563 (1983), the court failed even to acknowledge its opinion in Collister while holding that "where ... the policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it."  469 A.2d at 567.  Even so, the court noted that

(..continued)
policy provisions would have negated those expectations.").
Since Professor Keeton's article, a considerable number of trees have been sacrificed in the name of reasonable expectations as the academic community has debated what reasonable expectations means, which courts have adopted the doctrine, and whether it is desirable for them to have done so.  See generally John D. Ingram, Should an Insured Be Rewarded for Not Reading the Policy?, 41 Drake L. Rev. 705 (1992); Roger C. Henderson, The Doctrine of Reasonable Expectations in Insurance Law After Two Decades, 51 Ohio St. L.J. 823 (1990); Stephen J. Ware, A Critique of the Reasonable Expectations Doctrine, 56 U. Chi. L. Rev. 1461 (1989); Mark C. Rahdert, Reasonable Expectations Reconsidered, 18 Conn. L. Rev. 323 (1986); Kenneth S. Abraham, Judge-Made Law and Judge-Made Insurance: Honoring the Reasonable Expectations of the Insured, 67 Va. L. Rev. 1151 (1981).  Among the courts that have not clearly adopted the doctrine, the statements of the Pennsylvania Supreme Court are perhaps the most conflicting. E.g., Henderson, 51 Ohio St. L.J. at 829-31.

[4].  As Professor Henderson points out, Professor Keeton, who by that time had become Judge Keeton, read Collister as adopting the doctrine of reasonable expectations "in a form explicitly going beyond merely resolving ambiguities against insurers."  Davenport Peters Co. v. Royal Globe Ins. Co., 490 F.Supp. 286, 291 & n.5 (D. Mass. 1980) (Keeton, J.).

"in light of the manifest inequality of bargaining power between an insurance company and a purchaser of insurance, a court may on occasion be justified in deviating from the plain language of a contract of insurance."  Id.

Finally, in 1987, the Pennsylvania Supreme Court decided Tonkovic v. State Farm Mut. Auto Ins. Co., 513 Pa. 445, 521 A.2d 920 (1987).  In Tonkovic the insurer, following its acceptance of the insured's application and payment, unilaterally limited the scope of the coverage provided by the policy by inserting an exclusion about which it never informed the insured. Despite the unambiguity of the exclusion, the court felt that Standard Venetian Blind was distinguishable.  In Standard Venetian Blind, the court reasoned, the policy "was what it purported to be, and what the insured purchased, a general liability policy," 521 A.2d at 923, with all the usual incidents and exclusions.

> We find a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for.

Id.  Accordingly, the court held that "where ... an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and

understood, the change, regardless of whether the insured read the policy."  Id. at 925 (emphasis added).

A couple of other points about the Tonkovic opinion bear mentioning.  The first of these is that the court specifically found that the trial court's jury instruction correctly stated Pennsylvania law.  Id.  This is significant given the content of the charge:

> This is what the cases have said: the burden is upon the insurer ... to establish the insured's ... awareness and understanding of the exclusions.  So, even though the initial burden in this case is with the plaintiff and it stays with the plaintiff, indeed, there is a burden upon the insurance company in this case to prove to you by a preponderance of the evidence, that [the insured] was aware and understood the exclusion that existed here ... .

Id. at 922 (quoting the trial court).  The second point of consequence is that the court expressly noted that its holding was in accord with Collister, id. at 925, and proceeded to quote the core provisions of the Collister opinion, including the second block of language that we have quoted above.  Id. at 926.

Faced with Collister, Standard Venetian Blind, and Tonkovic, we are unable to draw any categorical distinction between the types of cases in which Pennsylvania courts will allow the reasonable expectations of the insured to defeat the unambiguous language of an insurance policy and those in which the courts will follow the general rule of adhering to the precise terms of the policy.  One theme that emerges from all the

cases, however, is that courts are to be chary about allowing insurance companies to abuse their position vis-a-vis their customers. Thus we are confident that where the insurer or its agent creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy that expectation will prevail over the language of the policy. In many cases, this is simply another way of saying what the supreme court made clear in Tonkovic, that an insurer may not make unilateral changes to an insurance policy unless it both notifies the policyholder of the changes and ensures that the policyholder understands their significance. In other cases this requires a more straightforward application of the principles of equitable estoppel which, as this court has recognized, West American Ins. Co. v. Park, 933 F.2d 1236, 1239 (3d Cir. 1991), underlie the cases that we have discussed and are manifest in the supreme court's repeated observations that the insurance industry and its recondite practices are responsible for deviations from the general rule. In both types of cases the insured, as a result of the insurer's either actively providing misinformation about the scope of coverage provided by a policy or passively failing to notify the insured of changes in the policy, receives something other than what it thought it purchased.[5] In consequence, as the

[5]. In contrast, cases like Standard Venetian Blind concern situations where the insured has no reasonable basis for believing that a policy covers events that it does not. That is, the insurer has neither told the insurer that a policy would cover certain events when by its terms it does not, nor made a change in the terms of coverage after the insured has agreed to

supreme court was careful to point out in both Collister, 388 A.2d at 1353, and Tonkovic, 521 A.2d at 926, "the insurer is often in a position to reap the benefit of the insured's lack of understanding of the transaction."

In this case had the district court permitted Township to amend its complaint and proceed with discovery, Township might have been able to assert one of these types of claims. On remand, Township might be able to demonstrate that Insurers did not change the language of the exclusion until after it had agreed to renew its policy with Insurers, and that Insurers either did not notify Township of the change in the exclusion or did not explain the significance of the change.

Alternatively, Township might be able to demonstrate that Insurers somehow misled it by indicating that, despite the language of the policy, claims such as the one at issue here would be covered.

In sum, we believe that Township could conceivably prove that it had a reasonable expectation of coverage despite policy language that appears to those not familiar with its relationship with Insurers unambiguously to preclude coverage, and that it therefore might be able to obtain coverage. We stress, however, that our holding must not be overstated. If Township was aware of the change in the exclusion provision

(..continued)
purchase insurance without informing the insured of the change and its consequences.

before it elected to renew its policy with Insurers and Insurers made no representation that the scope of coverage would not be reduced, or if after Township agreed to renew Insurers informed Township of the change and its significance, then Insurers must prevail because, in our view, the policy unambiguously excludes coverage for claims such as the one at issue here.

We are thus persuaded by Township's argument that dismissal pursuant to Rule 12(b)(6) was inappropriate. Before the district court denied the motion to amend and dismissed Township's complaint for failure to state a claim, it should have allowed discovery to enable it to review the circumstances surrounding the insurance agreement in order to determine whether Township might have had a reasonable expectation of coverage in this situation despite the language of the policy. We will therefore reverse and remand so that the district court can take these additional steps.

### B. Unconscionability

Township also argues that the new exclusion clause was unconscionable because it effectively abrogated most, if not all, of the coverage under the agreement and because only a handful of carriers offered this type of coverage. "Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." Worldwide Underwriters Ins. Co.

v. Brady, 973 F.2d 192, 196 (3d Cir. 1992) (citing Koval v. Liberty Mut. Ins. Co., 366 Pa. Super. 415, 531 A.2d 487, 491 (1987)).  See also Bishop v. Washington, 331 Pa. Super. 387, 480 A.2d 1088, 1093 (1984); Robert E. Keeton & Alan I. Widiss, Insurance Law § 6.3(b)(2) (1988) ("In some cases ... the unambiguous language of an insurance policy provides so little coverage that it would be unconscionable to permit the insurer to enforce it.").

Here Township argues that application of the exclusion to claims arising from prior equitable, non-monetary disputes, unreasonably favors Insurers.  Under the terms of the policy, Insurers agreed to pay Township for all civil claims for money damages.  The policy did not cover suits seeking strictly equitable relief.[6]  Township argues that if it had filed a claim at the commencement of the Blanche Road state dispute, Insurers would have denied coverage under the express terms of the policy. Township asserts that it is unfair for Insurers to apply the exclusion broadly so as to deny coverage of the Blanche Road § 1983 action because it related to prior disputes, when these disputes were of a nature which would not have been covered by

---

[6].  The policy excludes payments for
        4.  a.  claims, demands seeking relief, or redress, in any form other than money damages;
            b.  fees or expenses relating to claims, demands or actions seeking relief or redress, in any form other than money damages.

the insurance agreement and thus would not have been the basis of a claim under it or under any similar prior policy.

The exclusion is unconscionable, Township contends, because the majority of its litigation originates in prior state administrative proceedings. Generally, a claimant will first seek relief from a Township agency.[7] Such disputes rarely ripen into lawsuits for money damages unless the plaintiff finds he cannot obtain adequate relief through the local agency proceedings. Because of this, Township believes that the exclusion as interpreted by Insurers leaves it with virtually no coverage, since claims for non-monetary relief that arise during the policy period are not covered, and claims for monetary relief will almost inevitably be somehow tied to pre-policy litigation and therefore excluded.

Township drastically overstates the extent to which the exclusion reduces its coverage. In reality, the exclusion only creates a gap in Township's coverage for those claims that have arisen in some form prior to the effective date of the policy. This is because of Condition 4 of the policy, which states as follows:

> If during the policy period or extended discovery period:
> (a) The Public Entity or the Insureds shall receive written or oral notice from any

---

[7]. Township maintains at least seventeen administrative Commissions and Boards. Among them are the Township Council, Board of Auditors, Code Appeals Board, Zoning Hearing Board, Budget Committee, Environmental Advisory Board, and the Economic Development Corp.

party that it is the intention of such party to hold the Insureds responsible for the results of any specified Wrongful Act done or alleged to have been done by the Insureds while acting in the capacity aforementioned; or

(b) The Public Entity or the Insureds shall become aware of any occurrence which may subsequently give rise to a claim being made against the Insureds in respect of any such Wrongful Act;

Then the Public Entity or the Insureds shall as soon as practicable give written notice to the Company of the receipt of such written or oral notice under Clause 4(a) or of such occurrence under Clause 4(b). Upon the Insurer's receipt of such notice any claim which may subsequently be made against the Insureds arising out of such alleged Wrongful Act shall, for the purposes of this Policy, be treated as a claim made during the policy period in which such notice was given or if given during the extended discovery period as a claim made during such discovery period.

As a result of this provision Township can obtain coverage for all its claims so long as it notifies Insurers of potential claims during the policy period. The only effects of the additional exclusionary language, then, are to create the aforementioned gap in coverage and to place the additional burden of notification on Township. Neither of these effects render the policy unconscionable in our view.

## IV.

Lastly, we address Township's contention that the district court abused its discretion by granting Insurers' cross motion for sanctions under Rule 11. After a hearing on the motion, the district court imposed a sanction in the sum of

$2000[8] because Township had filed a motion with the district court to determine the Rule 59(e) motion while a timely petition for rehearing was pending before this Court.  Finding the motion to be duplicative, the district court held that Township had failed to conduct a reasonable inquiry prior to filing.  It concluded that Insurers incurred needless expense in having to respond to Township's jurisdictionally defective motion.

We have held that Rule 11 sanctions may be awarded in exceptional circumstances in order to "discourage plaintiffs from bringing baseless actions or making frivolous motions."  Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988).  See also Morristown Daily Record, Inc. v. Graphic Communications Union, Local 8N, 832 F.2d 31, 32 n.1 (3d Cir. 1987) (noting that "Rule 11 is not to be used routinely when the parties disagree about the correct resolution of a matter in litigation").  The Rule provides in relevant part

> The signature of an attorney or party
> constitutes a certificate by the signer that
> the signer has read the pleading, motion, or
> other paper; that to the best of the signer's
> knowledge, information and belief formed
> after reasonable inquiry it is well grounded

---

[8].  Although Insurers first claimed that their costs associated with answering the Rule 59(e) motion amounted to $8,800, and then lowered that amount to $5,535, the court determined a reasonable sanction to be $2000.

in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . ..

The Rule imposes an affirmative duty on the parties to conduct a reasonable inquiry into the applicable law and facts prior to filing.  Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 551 (1991).  See also Garr v. U.S. Healthcare, Inc., 22 F.3d 1274 (3d Cir. 1994).  An inquiry is considered reasonable under the circumstances if it provides the party with "an 'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact."  Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 289 (3d Cir. 1991), cert. denied, 112 S. Ct. 373 (1991) (quoting Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1359 (3d Cir. 1990), cert. denied, 112 S. Ct. 373 (1991)).

We dismissed Township's original appeal for lack of jurisdiction without specifying the basis for our decision. Instead of speculating about our rationale for this dismissal, Township sought clarification of the order by filing a petition

for rehearing. Apparently believing that the dismissal may have been due to the pending Rule 59(e) motion, Township also filed a motion in district court to determine that motion.

The district court correctly noted the well settled principle that, once a notice of appeal is filed, jurisdiction is no longer vested in the district court. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). This rule prevents "the confusion and inefficiency which would of necessity result were two courts to be considering the same issue or issues simultaneously." Venen v. Sweet, 758 F.2d 117, 121 (3d Cir. 1985). There are, however, exceptions to this general rule.[9] Specifically, "a premature notice of appeal does not divest the district court of jurisdiction." Mondrow v. Fountain House, 867 F.2d 798, 800 (3d Cir. 1989) (emphasis added). We have held that in order to avoid delay at the trial level "district courts should continue to exercise their jurisdiction when faced with clearly premature notices of appeal." Id. Because Township's notice of appeal was premature, Township's filing of the motion to determine the Rule 59(e) motion was not outside the bounds of objective reasonableness.

Insurers maintain that Mondrow does not apply to the instant facts because it was not clear that Township's appeal was

_____

[9]. For example, during the pendency of an appeal, the district court may review applications for attorney's fees, grant or modify injunctive relief, issue orders regarding the record on appeal, and vacate a bail bond and order arrest. Venen, 758 F.2d at 120 n.2.

premature. We find this argument to be without merit. There is no doubt that Township's June 23, 1992, letter could be considered to be a motion to amend pursuant to Rule 59(e). The letter expressly requested that the district court clarify whether its order applied to all parties and whether it dismissed the case without prejudice. The letter also requested leave to file an amended complaint. While the court entered an order denying the request to file an amended complaint, the order was silent as to the Rule 59(e) motion. As a result of the court's failure to dispose of the motion, Township's appeal could well be deemed to be premature. If so, it would then be within the bounds of reason for Township to file the motion to determine the Rule 59(e) motion based on its conclusion that the district court would continue to exercise jurisdiction.

Furthermore, we can find no support for any allegation that Township's motion was an attempt to harass Insurers or cause unnecessary delay of the judicial proceedings. To the contrary, Township appeared to be endeavoring to cure the jurisdictional defect in order to facilitate appellate review. Indeed, Insurers argue in support of the sanction that Township should have chosen one of two realistic procedural options: 1) seek rehearing in this Court or 2) seek to persuade the district court that it had not yet resolved its Rule 59 motion. If Insurers can advocate that Township should have taken action in either court, we do not find it unreasonable that Township, unsure of the choice it

should make, sought to protect its case on the merits by taking actions in both courts.

There are grey areas surrounding the issues of appealability, prematurity of appeals, and the situs of jurisdiction during the period when a party is attempting to clarify rulings by either or both the district court and the appellate court. When the issue of the ripeness of an appeal is not clear, a party should not be sanctioned under Rule 11 for taking reasonable steps to perfect the appeal or clarify its status. A more stringent rule would penalize the confused but cautious litigant. That is not the aim of Rule 11.

For all of these reasons, we do not find that Township so exceeded the bounds of Rule 11 that sanctions should be imposed. We find to the contrary that the district court abused its discretion because appropriate circumstances to justify the imposition of a Rule 11 sanction against Township did not exist.

V.

We will reverse the order dismissing the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and remand the case to the district court for further proceedings consistent with this opinion. In addition, we will reverse the order of the district court imposing a Rule 11 sanction against Township.

<u>Bensalem Township v. International Surplus</u>

<u>Lines Insurance Company et al.</u>

Nos. 93-1071 & 1072


HUTCHINSON, J., <u>Concurring</u>.


        I join the opinion of the Court.  I write separately only to emphasize the distinction between this case and <u>Standard Venetian Blind Co. v. American Empire Ins. Co.</u>, 503 Pa. 300, 469

A.2d 563 (1983), which embodies Pennsylvania's general practice of applying the "plain language" rule to construe exclusionary clauses in liability insurance contracts, instead of considering the "reasonable expectations" of the insured.  Since Standard Venetian Blind was decided, it appears to me that Pennsylvania has created exceptions to the plain language rule which make that rule inapplicable to the facts now before us.

It now seems apparent that Standard Venetian Blind did not signal wholesale rejection of the reasonable expectations principle foreshadowed in Rempel v. Nationwide Life Ins. Co. Inc., 471 Pa. 404, 370 A.2d 366 (1977), expressed in Collister v. Nationwide Life Ins. Co., 479 Pa. 579, 388 A.2d 1346 (1978), cert. denied, 439 U.S. 1089 (1979), and reiterated in Tonkovic v. State Farm Mut. Auto. Ins. Co., 513 Pa. 445, 521 A.2d 920 (1987). Instead, I think Standard Venetian Blind did no more than reject the attempt of Hionis v. Northern Mut. Ins. Co., 230 Pa. Super. 511, 327 A.2d 363 (1974), to wholly divorce the construction of exclusionary clauses from their text.  See id. (insurer has affirmative duty to explain the effect of all policy exclusions in precise, concrete terms without regard to the clarity of the language of the policy or the reasonableness of the insured's expectations).

Thus, in Standard Venetian Blind, all members of the Pennsylvania Supreme Court agreed that Hionis's failure to apply the clear language of the exclusions of the general liability

policy was inconsistent with the objective theory of contracts. The Hionis rationale would have covered insureds against risks as to which they had no reasonable expectation of coverage. Indeed, the majority in Standard Venetian Blind recognized the "manifest inequality of bargaining power between an insurance company and a purchaser of insurance," reasoning that a court may on occasion deviate from the plain language of a contract of insurance. Standard Venetian Blind, Co., 503 Pa. at 307, 469 A.2d at 567. Accordingly, under Erie v. Tompkins, 304 U.S. 64 (1938), I think the Court correctly decides that the insured Township should be given an opportunity to pursue discovery for the purpose of uncovering evidence that would tend to show Bensalem was not sold the policy it asked International Surplus Lines to provide, was not advised that this "claims-made" policy left it without coverage for risks it wanted covered, or that the promises given were made largely illusory because of the restrictive way the exclusions the insurer relies on interact with the claims-made policy.

In the present case, as in Collister, the Township claims that the policy it received was not the policy it wanted to buy and, most significantly, was led by the insurer to believe it was purchasing. The discovery the insured seeks is designed to support that allegation. Therefore, I believe the Court correctly decides that the Township should be given an opportunity to discover evidence that would support its theory

that the policy it received did not cover risks it was reasonably led to believe would be covered.

This case is subject to much the same analysis that Justice Manderino used in his plurality opinion announcing the judgment of the court in Rempel.  That analysis to my mind embodies an unobjectionable rule that an insurer should not be allowed to disclaim coverage after a loss occurred of a risk that its insured advised the company it wanted covered.  Rempel, 471 Pa. at 410-12, 370 A.2d at 371.

Although the Pennsylvania Supreme Court in Standard Venetian Blind did not adopt the Rempel principle in its broad form, the antipathy the Rempel plurality expressed, to the failure of insurance companies to alert their customers to exclusions that are likely to remain hidden until a loss occurs, was reiterated, this time by a majority, in Collister.  As the Court points out, Collister took an important step towards the reasonable expectation standard when the Pennsylvania Supreme Court stated, "[c]ourts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled."  Collister, 479 Pa. at 594, 388 A.2d at 1353. Furthermore, as the Court cogently demonstrates, this theme was continued in Tonkovic, the Pennsylvania Supreme Court's most recent pronouncement on this matter, and thereafter in the

decisions of the Pennsylvania Superior Court also cited in this Court's opinion. <u>See</u> Majority Op. at 14-15.[10]

<hr>

[10]. <u>Tonkovic</u>, which can be analyzed in terms of an illusory promise, is relevant here because Bensalem Township's policy is a "claims-made" policy. As such, it limits coverage to claims filed within the policy's term. <u>Standard Venetian Blind</u> involved an "occurrence-made" policy which provided coverage for any covered event that occurred during the policy term, without regard to when the claim was made. <u>See</u> <u>American Gas. Co. of Reading, Pennsylvania v. Confinisco</u>, 17 F.3d 62, 68 (3d Cir. 1994) (discussing differences between claims- and occurrence-made policies). Claims-made policies allow the insurer to make a more precise calculation of premiums based upon the costs of the risks assumed, a calculation that is difficult, if not impossible, in an occurrence-made policy where the insurer is faced with an unlimited "tail" of potential liability extending beyond the policy period.

In a claims-made policy, however, limitation of coverage to claims filed within the policy term can sometimes interact with broad exclusions like those present here to defeat the "reasonable expectations" of the insured or perhaps, in some cases, make the promised coverage illusory. <u>See</u> <u>Tonkovic</u>, 513 Pa. 445, 521 A.2d 920; <u>Worldwide Underwriters Ins. Co. v. Brady</u>, 973 F.2d 192 (3d Cir. 1992). Pennsylvania's exceptions to the plain language rule of <u>Standard Venetian Blind</u> seek to balance the relative advantages an insurance company has in underwriting claims-made policies with the insured's reasonable expectations of coverage. <u>See</u> <u>Zuckerman v. National Union Fire Ins. Co.</u>, 100 N.J. 309, 495 A.2d 395 (1985) (for an excellent discussion of the discrete issues presented by claims and occurrence made policies). Still, if insurance is to serve its basic purpose of splitting economic loss that would be catastrophic to a single insured among a group of persons facing similar risks, exclusion of coverage for losses that a particular insured is more or less certain to suffer is necessary. For who, as it was once said, would not give up a peppercorn in exchange for a pound and who, no matter how well endowed with pounds, could long continue such an exchange? The exclusions in question here may be meant to do no more than solve the problem of moral risk. Whether they go so far as to deprive the insured of the coverage it reasonably expected to receive remains to be seen.

Accordingly, I agree with the Court that Pennsylvania would not, under the circumstances here, apply Standard Venetian Blind's plain language rule to exclude Bensalem Township from the coverage it seeks if it can show that it reasonably expected such coverage. Instead, I think Pennsylvania would look beyond the strict technical language of this policy's exclusion to determine what coverage the insured told the insurer it wanted to buy and whether the insurer reasonably led it to expect such coverage by the terms of the policy it tendered.

Accordingly, I join the opinion of the Court.