

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-24-2004

# Mohney v. Forney

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1436

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Mohney v. Forney" (2004). *2004 Decisions.* Paper 920.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/920

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1436

TIMOTHY A. MOHNEY; GAY N. MOHNEY;
JEFFREY A. MOHNEY; AMANDA MARIE MOHNEY,
a minor, by TIMOTHY A. MOHNEY, guardian,
                                                    Appellants

v.

PAUL FORNEY;
METROPOLITAN LIFE INSURANCE COMPANY

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 96-cv-00854)
District Judge:  Honorable Donetta W. Ambrose

Argued February 23, 2004

Before:  RENDELL, BARRY and ROSENN, <u>Circuit</u> <u>Judges</u>.

(Filed:   March 24, 2004)

Kenneth R. Behrend     **[ARGUED]**
BEHREND & ERNSBERGER
306 Fourth Avenue
Union National Bank Building, Suite 300
Pittsburgh, PA  15222
    *Counsel for Appellants*

William M. Wycoff
Kevin P. Allen
THORP, REED & ARMSTRONG
301 Grant Street
One Oxford Centre, 14th Floor
Pittsburgh, PA  15219

B. John Pendleton, Jr.    **[ARGUED]**
Robert P. Lesko
McCARTER & ENGLISH
100 Mulberry Street
Four Gateway Center
Newark, NJ  07101-0652
  *Counsel for Appellees*

---

OPINION OF THE COURT

---

RENDELL, <u>Circuit Judge</u>.

The Metropolitan Life Insurance Company ("MetLife") through its sales agent, Paul Forney (collectively, "Defendants") sold Plaintiff Timothy Mohney whole life insurance policies on the lives of his two children.  The Defendants called these policies the "Metropolitan 50-50" plan ("50/50 Plan"), "a plan to provide for your personal savings."   Mohney sued, contending that the Defendants misrepresented the true nature of his purchase.  In essence, Mohney alleged that what he was led to believe were savings plans were instead simply life insurance policies. The District Court granted the Defendants' motion for summary judgment on all of Mohney's claims.  For the reasons set forth below, we will affirm in part and reverse in part.

2

The District Court exercised subject matter jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, applying the law of Pennsylvania. Our jurisdiction for review of the District Court's final order is based on 28 U.S.C. § 1291.

## I.

Mohney, a disabled coal miner with a high school education, and his wife met with a MetLife's sales agent, Forney, in the summer of 1992. Mohney testified in his deposition that he informed Forney of his intention to buy a savings plan for his children and that he was not interested in purchasing insurance policies. Forney perused a binder of information on MetLife's financial products with the Mohneys, including the 50/50 Plan, and explained how these products could help Mohney accumulate savings on behalf of his children. Indeed, Mohney claimed Forney suggested that after several years, the yield from the 50/50 Plan could allow Mohney to "enjoy a life out on the golf course" and support his children's higher education.

The promotional binder contained articles extolling MetLife's financial strength and recommendations on structuring a personal savings plan. While a few of the sales materials referred to MetLife as an insurance company, MetLife's financial products were described without any reference to insurance, e.g., as "investment plans." In particular, MetLife compared the 50/50 Plan to other traditional investment vehicles, such as mutual funds, money market accounts, IRAs, and CDs. By contrast to those other investment vehicles, the materials suggested that the 50/50 Plan was the only investment vehicle that

3

guaranteed "self-completion," i.e., "in case of premature death or disability Metropolitan will complete the plan." Mohney understood that this self-completion feature of the 50/50 Plan was effected through life insurance.

On August 4, 1992, Mohney signed an application for two whole life insurance policies for his children. Mohney acknowledged in his deposition that he was applying for life insurance but testified that he believed that insurance was just one component of the savings plan: "I assumed [the insurance policies] were part of the Savings Plan, that if [the children] died, they wouldn't lose that money or whatever. They were part of the 50 50 Savings Plan." Mohney testified that he did not suspect there was a problem with the 50/50 Plan until he heard a news report in 1994 concerning litigation against MetLife for its sales practices. After securing counsel, he filed actions against MetLife and Forney.

Mohney sued the Defendants for inter alia common law fraud and deceit; breach of fiduciary duty; violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); negligent supervision; breach of contract; bad faith; and, negligence per se. The Defendants successfully moved the District Court to grant summary judgment on all of Mohney's claims.

Mohney appeals several, but not all, of the claims dismissed on summary judgment. He appeals the District Court's decision with respect to the claims of fraud and deceit; violation of the UTPCPL; negligent supervision; breach of fiduciary duty;

4

collateral estoppel by virtue of the Pennsylvania Insurance Department's findings of deceptive marketing practices; and, bad faith.[1]  We review summary judgment motions <u>de novo</u>, using the same test applicable in a district court.  <u>Mass. Sch. of Law v. ABA</u>, 107 F.3d 1026, 1032 (3d Cir.1997).   In deciding a motion for summary judgment, the "test is whether there is a genuine issue of material fact, and if not, whether the moving party is entitled to judgment as a matter of law."  <u>Medical Protective Co. v. Watkins</u>, 198 F.3d 100, 103 (3d Cir. 1999).  Facts must be viewed in the light most favorable to Mohney as the non-moving party.  <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II.

We begin our discussion with Mohney's allegations of fraud and deceit against the Defendants.  In order to prove a claim of fraudulent misrepresentation under Pennsylvania law, Mohney required clear and convincing evidence of: 1) a misrepresentation; 2) a fraudulent utterance; 3) an intention by the maker that the recipient will be induced to act; 4) justifiable reliance on the misrepresentation; and, 5) damage to the recipient as a proximate result.  <u>Tunis Bros. Co., Inc. v. Ford Motor Co.</u>,

---

[1]Mohney does not appeal the District Court's decision that only he, not his wife or children, had standing to sue Forney.  Further, he does not appeal the District Court's grant of summary judgment with respect to his claims of breach of contract, negligence per se, and willful disregard.

5

952 F.2d 715, 731 (3d Cir. 1991). The District Court focused on Mohney's claim that he justifiably relied on the Defendants' representation that he was purchasing a savings policy.

In determining whether reliance was justifiable, the Supreme Court of Pennsylvania has held that "[n]either this Court nor a jury can consider the issue without considering the relationship of the parties involved and the nature of the transaction." Rempel v. Nationwide Life Ins. Co., Inc., 370 A.2d 366, 368 (Pa. 1977); see also Wittekamp v. Gulf & Western, Inc., 991 F.2d 1137, 1144 (3d Cir. 1993) (observing that Pennsylvania law on justifiable reliance looks to such factors as the respective intelligence and experience of the parties). Given the relationship between insured and insurers, the reasonable expectation of the purchaser will in certain circumstances defeat even the express language of an insurance policy. See Bensalem Township v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1308-12 (3d Cir. 1994) ("Thus we are confident that where the insurer or its agent creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy that expectation will prevail over the language of the policy.").

Agreeing with the Defendants, the District Court set forth two reasons for its conclusion that Mohney did not justifiably rely on any misrepresentation. First, the District Court observed that Mohney could not have justifiably relied on Forney's representations when those representations conflicted with the express terms of the

6

written insurance policies. Second, the Court pointed to Mohney's own acknowledgment, in deposition testimony, that he was applying for life insurance.

The District Court concluded that the policies' express provisions belied Mohney's claimed reliance. The Court noted that these policies were clearly labeled "Whole Life Policy" and "Life insurance payable when the insured dies." However, as noted above, Pennsylvania courts often privilege the insured's reasonable expectation over potentially contrary language contained in a policy. See Bensalem, 38 F.3d at 1309. Here, Mohney contended that he reasonably expected to purchase a savings plan with an insurance component. To support this contention, Mohney points to the promotional binder which referred to MetLife's "investment plans" and the 50/50 Plan in particular as "a plan to provide for your personal savings." Indeed, the binder included a chart comparing the features of the 50/50 Plan to other traditional investment vehicles such as mutual funds and IRAs. In light of this evidence, we conclude that a genuine issue of material fact exists as to whether Mohney justifiably expected to purchase a savings plan, notwithstanding any contrary text in the insurance policies. And, the language cited by the District Court merely makes clear that Mohney applied for life insurance, which Mohney believed to be but one component, the self-completing feature, of an overall savings plan.[2] Thus, the express terms of the insurance policies do not warrant the grant

---

[2]More broadly, the District Court reasoned that Mohney should have been able to surmise that he was purchasing only insurance policies. The Court observed that a high level of sophistication was not "required to discover that the premium payments made

7

of summary judgment.

The same can be said with respect to the District Court's emphasis on Mohney's deposition testimony, in which he acknowledged he was applying for life insurance. This admission is consistent with his belief that life insurance was necessary to effectuate the self-completion component of the savings plan. As set forth in his complaint, Mohney alleged that "[t]he only mention of the word 'insurance' by the Defendant Forney in his sales presentation to the Plaintiffs was in his representation that these 'savings plans' were sheltered by a death benefit, which would complete the plans should [their children] die before reaching age 65. This insurance, however, was supposedly only an added bonus to the 'Retirement Plan." Pl.'s Compl. ¶ 36. Thus, neither his awareness of purchasing insurance nor the text of those policies were necessarily inconsistent with Mohney's reliance, or render it unjustifiable. Clearly, Mohney understood that insurance was part of what he was being sold. Yet, the overwhelming focus in the sales presentation on the savings component presents material issues of fact that are best left for a jury to decide. Consequently, we will reverse the District Court's grant of summary judgment as to Mohney's fraud and deceit claims.

---

would be used both to fund insurance coverage, and to set up an accumulation fund which would earn dividends." This is a questionable assumption. It is not self-evident that consumers such as Mohney who are unfamiliar with finance would readily understand the nature of premiums, accumulation funds, and dividends. This is especially true given the arguably confusing sales materials that characterize insurance as "savings plans" and "premiums" as monthly "deposits."

III.

Mohney further asserted claims under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa.Stat.Ann. §§ 201-1 et seq, which was enacted to outlaw unfair or deceptive business practices. See Commonwealth v. Monumental Props., Inc., 329 A.2d 812, 815 (Pa. 1974). In particular, Mohney argued that the Defendants engaged in unfair or deceptive acts or practices by: 1) "causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services" (§ 201-2(4)(ii)); 2) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . . " (§ 201-2(4)(v)); 3) "representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (§ 201-2(4)(vii)); and, 4) "making solicitations for sales of goods or services over the telephone without first clearly, affirmatively and expressly stating [the purpose of the call and nature of the services" (§ 201-2(4)(xvii)).

The District Court first observed that "an insurer may be held liable under the [UTPCPL] only if there are fraudulent misrepresentations in order to sell a policy." Aetna Cas. & Sur. Co. v. Ericksen, 903 F.Supp. 836, 841 (M.D. Pa. 1995) (citing Pekular v. Eich, 513 A.2d 427, 433-34 (Pa. Super. 1986)). Therefore, Mohney was required to prove the five elements of a misrepresentation claim. Having already determined that Mohney's reliance was unjustifiable, the District Court struck down these UTPCPL

9

claims. But in light of our discussion and decision above that there remain genuine issues of material fact as to Mohney's justifiable reliance, we will reverse the District Court with respect to the UTPCPL claims, specifically § 201-2(4)(ii), (v), and (vii).

However, Mohney's claim relying on § 201-2(4)(xvii) stands on a different footing. Mohney claimed that the Defendants engaged in fraudulent conduct by violating § 201-2(4)(xvii), which sets out requirements for telephone solicitations. However, there appears to be no evidence that the Mohneys were solicited by telephone. Indeed, it is undisputed that Forney met with the Mohneys in person. Because we may affirm a decision on grounds other than those relied upon by the District Court, we will affirm summary judgment with respect to the § 201-2(4)(xvii).

IV.

Mohney also alleged that MetLife failed to adequately supervise its employee Forney. The District Court reasoned that this claim of negligent supervision rested on an underlying actionable misrepresentation. See Fisher v. Aetna Life Ins. & Annuity Co., 39 F.Supp.2d 508, 511 n.1 (M.D. Pa. 1998) ("If plaintiffs cannot show that any actionable misrepresentations or omissions occurred, then any negligence by defendant in training or supervising its agents is irrelevant.") Having already concluded that Mohney did not justifiably rely on Forney's sales presentation, the Court held that there was no actionable misrepresentation, and hence no viable claim of negligent supervision.

10

Notwithstanding our holding that Mohney has created a genuine issue of material fact as to his reliance, we will affirm the District Court on an alternative ground. A valid negligent supervision claim in Pennsylvania law requires proof that an employee acted outside of the scope of his employment. See Mullen v. Topper's Salon and Health Spa, Inc., 99 F.Supp.2d 553, 556 (E.D.Pa. 2000). To the contrary, Mohney avers in his complaint that Forney was "at all times relevant to this action, acting within the course and scope of his agency and employment." Pl.'s Compl. ¶ 4. Therefore, we will affirm the District Court's grant of summary judgment as to Mohney's claim of negligent supervision.

V.

We have considered the other challenges leveled by Mohney regarding the claims he presented and conclude that summary judgment was appropriately entered against him for the reasons set forth by the District Court. Therefore, we decline to disturb the District Court's ruling with respect to Mohney's claims of breach of fiduciary duty, collateral estoppel by virtue of the Pennsylvania Insurance Department's findings, and bad faith.

VI.

For the foregoing reasons, the District Court's judgment will be affirmed in part

and reversed in part. Given our disposition that Mohney's justifiable reliance is a triable issue of fact, we will reverse the District Court's order with respect to the claims of fraud and deceit and violations of UTPCPL, specifically, § 201-2(4)(ii), (v), and (vii), and affirm with respect to the remainder of the issues in this appeal. Accordingly, we will remand to the District Court for further proceedings consistent with this opinion.

_____