**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2909
_____

UNITED FINANCIAL CASUALTY COMPANY

v.

PRINCETON EXCESS AND SURPLUS
LINES INSURANCE COMPANY,
                                                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-15-cv-06840)
District Judge: Honorable Gerald A. McHugh
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 12, 2018
_____

Before: CHAGARES, VANASKIE, *Circuit Judges*, and BOLTON, *District Judge*[*]

(Filed: August 30, 2018)
_____

OPINION[**]
_____

VANASKIE, *Circuit Judge.*

_____

[*] The Honorable Susan R. Bolton, Senior United States District Judge for the District of Arizona, sitting by designation.
[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

This appeal seeks reversal of the District Court's Order granting United Financial Casualty Company's Motion for Summary Judgment, and denying Princeton Excess and Surplus Lines Insurance Company's Motion for Summary Judgment, which sought a determination of the parties' respective duties to defend claims of direct and vicarious liability arising from a settled state court bodily injury lawsuit. For the foregoing reasons, we will affirm.

## I.

This case has its genesis in January 2014 when Joseph Nice—a delivery driver for courier service Prestige Delivery Services, Inc. ("Prestige")—injured a mechanic, Kenneth Dunbar, in the course of delivering goods on behalf of Staples. In the wake of the accident, Dunbar filed a negligence suit in state court, asserting claims not only against Nice, but also against Prestige and Prestige's client, Staples. Dunbar alleged that Nice was directly liable for his negligence. He also alleged that Prestige and Staples were (1) vicariously liable for Nice's negligence under the doctrine of respondeat superior and (2) directly liable through theories of negligent hiring, supervision, and entrustment. United Financial Causality Company ("United")—Nice's insurance company—elected to provide a defense for all three defendants in the lawsuit.

On March 3, 2015, Dunbar entered into a release with United, which settled all the direct liability claims against Nice, as well as the vicarious liability claims against Prestige and Staples. The agreement did *not* settle the direct liability claims against Prestige and Staples. A few months later, on September 14, 2015, Dunbar and United reached a second agreement, settling these remaining claims.

2

United filed the instant suit in federal court against Princeton—Prestige's insurance company—seeking (1) contribution on the vicarious liability claims and (2) a declaratory judgment as to which insurance policy (United's or Princeton's) was primary for the direct liability claims against both Prestige and Staples. United conceded that it was responsible for all costs of defending the direct claims against Nice and the vicarious liability claims against Prestige. With regard to the vicarious liability claims against Staples, both parties agreed that their respective policies provided coverage, but disputed the allocation of costs. With regard to the direct liability claims, the parties disputed which policy was primary and who should bear the costs.

The parties cross-moved for summary judgment. Regarding the vicarious liability claim against Staples, the District Court found that Princeton was ninety-one percent responsible and United was nine percent responsible. Regarding the direct liability claims, the District Court found Princeton was primary and solely responsible for the cost of defending these claims. Accordingly, the District Court entered an order on August 1, 2017, granting summary judgment in favor of United, awarding United $227,448.68 on the vicarious liability claim against Staples, and declaring Princeton solely responsible for the costs of defending the direct liability claims. Following the grant of summary judgment, Princeton timely appealed.

II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291. In Pennsylvania, "[t]he interpretation of an insurance contract is a question of law," *Kvaerner Metals Div. of*

3

*Kvaerner United States, Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa.

2006) (citation omitted), and thus we exercise plenary review.

## III.

Princeton has only appealed the District Court's order with respect to its ruling on

the direct liability claims.[1]  Princeton argues that the District Court erred in two ways: (1)

---

[1]     We decline to review the apportionment of liability on the vicarious liability claim
against Staples, as it was not raised in Princeton's opening brief.  *Kirschbaum v. WRGSB
Assocs.*, 243 F.3d 145, 151 (3d Cir. 2001).  In any event, we would defer to the wisdom
of the District Court on the proper amounts.  Princeton's policy reads:

> When this coverage form and any other coverage form or
> policy covers on the same basis, either excess or primary, we
> will pay only our share.  Our share *is* the proportion that the
> Limit of insurance of our coverage *form* bears to the total limits
> of all the coverage forms and policies covering on the same
> basis.

(App. 287).  United's policy reads:

> If coverage under more than one policy applies on the same
> basis, whether excess or primary, we will *pay* only our
> proportionate share.  Our proportionate share is the proportion
> that the Limit of Liability of this policy bears to the total of the
> limits of all the coverage forms and policies covering on the
> same basis.

(*Id.* at 23).  Based on this we find that the District Court correctly concluded that,

> because United and Princeton provided Staples coverage on
> "the same basis"—in other words, because they both provided
> it primary coverage [for vicarious liability]—each is
> responsible for the percentage of total coverage that its policy
> constitutes.  Under the apportionment clauses explicitly stated
> in both insurance policies, United is responsible for nine
> percent and Princeton is responsible for ninety-one percent of
> costs incurred for vicarious liability claims against Staples.

by failing to recognize that United's policy should have been primary with regard to the direct liability claims; and (2) by relying on the reasonable expectations doctrine to bolster the conclusion that United's policy covered vicarious liability claims only.

We will first address whether United or Princeton should be responsible for claims of direct liability against Prestige. The District Court held that United was explicitly relieved of responsibility for these claims by the policy's own language. We agree. The United policy contains a definitions section that explicitly limits responsibility of the insured, *i.e.,* Joseph Nice, to injuries that arise out of Nice's direct conduct. Specifically, the policy states:

> we will pay damages, other than punitive or exemplary damages; for bodily injury, property damage, and covered pollution cost or expense, for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of that insured auto.

(App. 22) (emphasis omitted). Thus, as the District Court pointed out, "[t]he trigger for coverage is conduct on the part of the policy holder or an authorized driver. As a matter of simple logic, there is no coherent factual scenario where Nice, the delivery man, can be deemed negligent for hiring, or failing to supervise, *himself*." (*Id*. at 11).

Princeton counters that United should be liable for claims of direct liability against Prestige, citing *Pulleyn v. Cavalier Insurance Corp.*, 505 A.2d 1016 (Pa. Super. Ct. 1986). Princeton's reliance on *Pulleyn*, however, is misplaced. *Pulleyn* concerned a general liability policy that contained an exclusion for claims arising out of the operation

_____

(*Id*. at 9).

5

of a vehicle. 505 A.2d at 1017. The Pennsylvania Superior Court considered whether a claim of negligent entrustment of a vehicle was sufficiently linked to the operation of that vehicle so as to trigger the exclusion. *Id*. at 1018-20. The court concluded that it was, and the exclusion applied. *Id*. at 1020.

Unlike *Pulleyn*, the policies at issue here do not contain vehicle exclusion clauses. As the District Court noted:

> There is no need to import principles adopted for the purpose of resolving coverage disputes involving exclusions in non-auto policies where the operative language of the policy before me sufficiently defines the scope of coverage. Furthermore, as noted above, both policies here [United and Princeton] are automobile policies, and the policy issued by Princeton was a commercial auto policy explicitly meant to protect Prestige from liability connected to the operation of vehicles in its business. Given the specific question before me – how to allocate responsibility between two carriers, both of which have issued commercial vehicle policies – principles adopted in the separate context of exclusion in non-auto policies confuse the issue.

(App. 11). We agree with this analysis, and affirm the District Court's ruling that Princeton was obligated to cover the direct liability claims asserted against Prestige.

With regard to the direct liability claims against Staples, we note that Princeton's policy states that its coverage will be considered "primary" for any liability assumed under an "Insured contract." (*Id*. at 211). An "Insured contract" is defined by Princeton's Policy as:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that

6

would be imposed by law in the absence of any contract or agreement[.]

(*Id.*).  The Delivery Service Agreement negotiated between Prestige and Staples states:

> *Courier will indemnify and hold harmless Staples*, and each of its directors, officers, employees, agents and representatives, and any subsidiary or affiliates of Staples from any and all losses, costs, and expenses (including legal fee and disbursements), and damages, including incidental and consequential damages which any of them may sustain and become liable for in whole or in part as a result of or arising from any failure to comply with the terms conditions and covenants in this Agreement*, any negligence, willful misconduct or other fault, act or omission of Courier or Courier's employees, subcontractors or others under Courier's control*, whether said losses, costs or damages result from injuries to the person or the property, and *whether said liability is premised upon contract, private action, administrative enforcement action or upon tort (including without limitation strict liability and product liability)*.  Courier agrees at its expense and at Staples' option, to defend or assist in the defense of any action against Staples, whether by way of claim, counterclaim or defense for which Courier has an indemnification obligation under this paragraph.  Staples shall have the right to approve or reject all proposed settlements of any action covered by this section.  The provisions of this paragraph shall survive expiration, cancellation or termination of this Agreement.

(*Id*. at 212-13) (emphasis added).  We agree that the language above strongly suggests that the contract between Prestige and Staples was an "Insured contract."  Accordingly, Prestige bears primary coverage for claims of direct liability against Staples.[2]

---

[2] Princeton again relies on *Pulleyn* and its progeny to support its argument that United should be responsible for the direct liability claims against Staples.  We will not address this argument again, but instead, direct the parties to the preceding discussion of the argument and our dismissal of it.

Finally, with regard to the District Court's use of the reasonable expectations doctrine to support its conclusions, we find no error in its application. The District Court found it persuasive that United's policy extended only to acts which were the sole responsibility of Nice himself, making it "difficult to believe that United reasonably expected it was issuing coverage protecting third parties for the decision to hire him." (*Id.* at 12). Under Pennsylvania law, "the parties' reasonable expectations are to be the touchstone of any inquiry into the meaning of an insurance policy." *Bensalem Twp. v. Int'l Surplus Lines, Ins. Co.,* 38 F.3d 1303, 1309 (3d Cir. 1994). Since the wording of United's policy suggests that it would not cover acts of a third party, it is more "reasonable" to assume that the courier service, in this case Prestige, would be held responsible for its own actions of hiring its workers—therefore, laying liability on Princeton and not United. We agree that this is a sound interpretation of the law on this point and we will not disturb the District Court's analysis.

V.

Based on the foregoing, we will affirm the August 1, 2017, Order of the District Court.